ROSENPLAENTER v. PROVIDENT SAV. LIFE ASSUR. SOC. OF NEW YORK.

(Circuit Court, W. D. Tennessee, W. D. January 7, 1899.)

1. LIFE INSURANCE—CONSTRUCTION OF POLICY—TERM INSURANCE.
A life insurance policy in terms insuring the holder for one year from its date, but containing a provision for its renewal from year to year during the life of the assured by the payment of successive annual renewal premiums, is not an entire contract for the life of the assured, but is a valid "term insurance contract for one year," within Laws N. Y. 1892, c. 690, § 92, which is specially excepted by that section from its general provision that no policy shall be declared forfeited or lapsed for nonpayment of premiums without the prescribed notice to the insured.

2. SAME—STATUTES REGULATING FORFEITURES—EFFECT OF REPEAL.
Laws N. Y. 1877, c. 321, providing that no policy of life insurance should be declared forfeited unless a prescribed notice should be served on the insured, did not become a part of the contracts created by policies subsequently written in the state, so that its repeal impaired the obligation of such contracts, but was merely a regulation for the government of insurance companies, belonging to the class of remedial statutes which it is competent for the legislature to enact, repeal, or amend, making the same applicable to existing contracts, without affecting the obligation of such contracts.

On Demurrer to Declaration.

The defendant issued a policy of insurance upon the life of Carlos G. Rosenplaenter, in favor of his wife, Mary Anna, the above-named plaintiff. It is dated on the 1st day of April, 1889, is for the sum of $10,000, and payable, at the death of the life assured, to the beneficiary. The consideration named, besides the conditions and agreements indorsed upon the back of the policy, is: "The payment of the first annual premium on this policy, and in semi-annual equivalents of $168.60, each payable on the first days of April and October, respectively,"—in consideration of which payment the defendant company promises to pay the plaintiff the sum of $10,000 "within 90 days after the acceptance of satisfactory proof, at its office in the city of New York, of the death of Carlos G. Rosenplaenter, * * * provided such death shall occur before twelve o'clock noon on the first day of April, A. D. 1890." The following is one of the stipulations of the policy: "And the said society further agrees to renew and extend this insurance upon like conditions during each succeeding year of the life of the insured from date hereof upon the

payment of the annual renewal premium for the actual age attained, in accordance with the schedule rate printed on the next page of this policy for each one thousand dollars insured, except as reduced by the application of the surplus and guaranty fund, such payment to be made in semiannual equivalents, payable on the first days of April and October, respectively, in each succeeding year." Among the conditions and agreements referred to in the policy is this: "Sec. 3. The annual premiums of this policy may, by consent of the society, be paid by the half-yearly or quarterly equivalent, as indicated below, if desired; but failure to pay when due any such semiannual or quarterly equivalent will then terminate the policy. In case of claims by death, any unpaid portion of the annual premium will be deducted from the sum insured."

The declaration, after counting on the policy, avers that the premiums were paid, in accordance with the terms of the policy, on the 1st days of April, 1889, October, 1889, April, 1890, October, 1890, and the 1st day of April, 1891. It is then averred that the life assured died on the 5th day of September, 1894; that the plaintiff applied for proper forms and blanks to make the required proofs of loss, but these were refused, and she was informed that the policy would not be paid, because it had lapsed for nonpayment of premiums. The declaration pleads, as an avoidance of the alleged forfeiture, a statute of the state of New York, setting out such parts as are deemed material in hæc verba; but, for convenience, the whole of said statute is here quoted, as follows (chapter 321, Laws 1877):

"Section 1. Section one of chapter three hundred and forty-one of the Laws of Eighteen Hundred and Seventy-Six, entitled 'An act regulating the forfeiture of life insurance policies,' is hereby amended so as to read as follows: 'Sec. 1. No life insurance company doing business in the state of New York shall have power to declare forfeited or lapsed any policy hereafter issued or renewed by reason of nonpayment of any annual premium or interest, or any portion thereof, except as hereinafter provided. Whenever any premium or interest due upon any such policy shall remain unpaid when due, a written or printed notice stating the amount of such premium or interest due on such policy, the place where said premium or interest should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is assured, or the assignee of the policy, if notice of the assignment has been given to the company, at his or her last known postoffice address, postage paid by the company, or by an agent of such company or person appointed by it to collect such premium. Such notice shall further state that unless the said premium or interest then due shall be paid to the company or to a duly appointed agent or other person authorized to collect such premium within thirty days after the mailing of such notice, the said policy and all payments thereon will become forfeited and void. In case the payment demanded by such notice shall be made within the thirty days limited therefor, the same shall be taken to be in full compliance with the requirements of the policy in respect to the payment of said premium or interest, anything therein contained to the contrary notwithstanding; but no such policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice: provided, however, that a notice stating when the premium will fall due, and that if not paid, the policy and all payments thereon will become forfeited and void, served in the manner hereinbefore provided, at least thirty and not more than sixty days prior to the day when the premium is payable, shall have the same effect as the service of the notice hereinbefore provided for.'

"Sec. 2. The affidavit of any one authorized by section one to mail such notice, that the same was duly addressed to the person whose life is assured by the policy, or to the assignee of the policy, if notice of the assignment has been given to the company, in pursuance of said section, shall be presumptive evidence of such notice having been given."

After averring that the policy was a New York contract, and that in the application for the policy it was stipulated that it should at all times and places be construed to be a contract made in the city of New York, the declaration avers that the defendant company failed to give or mail the notice required by the said statute, but did mail a notice on the 1st day of September,

1891, to the insured, that the said premium was payable October 1, 1891, which the plaintiff avers was only 29 days, and not the 30 days required by the statute, wherefore the policy remains in full force and effect. It is then declared that the life assured kept and performed all the conditions required of him except the nonpayment of the premiums payable October 1, 1891, April 1, 1892, October 1, 1892, April 1, 1893, October 1, 1893, and April 1, 1894. The declaration is not very clear in its allegations, but may be taken to aver—what is understood to be the fact—that after the notice mailed on the 1st day of September, 1891, no notice was given by mail of the subsequently accruing premiums, which were not paid. This may be held to be included in the general averment that the defendant failed to comply with the statute in regard to notice, and that the said policy is still in full force and effect.

There is a demurrer to this declaration upon the following grounds:

First. The declaration shows that notice was mailed on the 1st day of September, 1891; that the next premium payable was October 1, 1891, which the life assured or the plaintiff failed to pay. Therefore it appears that the policy was forfeited for the nonpayment of the premium due October 1, 1891.

Second. The declaration shows that the first year of insurance expired at noon on the 1st day of April, 1890; that the company agreed by the contract to renew and extend the insurance each succeeding year, upon the payment of the annual renewal premium for the actual age attained according to the given schedule, the payments to be made in semiannual equivalents, payable on the 1st days of October and April, respectively, in each succeeding year; that the life assured paid only down to and including the payment due the 1st day of April, 1891, failing to pay the premiums due on the 1st days of October, 1891, April and October, 1892, April and October, 1893, and April, 1894; that if the notice mailed on the 1st day of September, 1891, was invalid for any reason, then the only effect of its invalidity was to extend and renew the policy of insurance to the 1st day of April, 1892, and not thereafter; that, if no notice was then given, the only effect of the failure was to renew the policy to the 1st day of October, 1892; that after that date the above statute of 1877 was altered, amended, and repealed by section 92 of chapter 690 of the Laws of New York for 1892, which is as follows: "Sec. 92. No Forfeiture of Policy without Notice. No life insurance corporation doing business in this state, shall declare forfeited or lapsed, any policy hereafter issued or renewed, and not issued upon the payment of monthly or weekly premiums, or unless the same is a term insurance contract for one year or less, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, interest or installment or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating the amount of such premium, interest, installment or portion thereof, due on such policy, the place where it should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is insured, or the assignee of the policy, if notice of the assignment has been given to the corporation, at his or her last known postoffice address, postage paid by the corporation or by an officer thereof, or person appointed by it to collect such premium, at least fifteen and not more than forty-five days prior to the day when the same is payable. The notice shall also state that unless such premium, interest, installment, or portion thereof, then due, shall be paid to the corporation, or to a duly-appointed agent or person authorized to collect such premium by or before the day when it falls due, the policy and all payments thereon will become forfeited and void except as to the right to a surrender value or paid up policy as in this chapter provided. If the payment demanded by such notice shall be made within its time limited therefor, it shall be taken to be in full compliance with the requirements of the policy in respect to the time of such payment; and no such policy shall, in any case, be forfeited, or declared forfeited, or lapsed, until the expiration of thirty days after the mailing of such notice. The affidavit of any officer, clerk or agent of the corporation, or of anyone authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy, shall be presumptive evidence that such notice has been duly given." This section was amended by chapter 218, Laws 1897, by adding the following: "No action shall be maintained to recover under a

forfeited policy, unless the same is instituted within one year from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued."

After thus pleading the New York statute of 1892, the second ground of the demurrer proceeds to aver that the effect of the act of 1892 was to so amend the law of 1877 in respect of such forfeitures and lapsing of policies as to except from the operation of the law of 1877 all policies based upon the payment of monthly or weekly premiums, "or where the policy issued was for a term of one year or less"; that it appears from the averments of the declaration that the contract of insurance set out was for a term of one year or less, wherefore the policy was not within the operation of the law of 1877; and that upon the failure of the life assured or the plaintiff to pay the premiums due April 1 and October 1, 1892, and the subsequently accruing premiums, by the express terms of the policy it became lapsed and forfeited.

Third. The third ground of demurrer is that the declaration shows that the policy insured the life assured from the 1st day of April, 1889, until the 1st day of April, 1890; that it was the agreement of the defendant company to renew and extend the life insurance under like conditions during each succeeding year of the life assured, upon the payment of the annual renewal premiums for the actual age attained, according to the rates in the schedule, the payments to be made semiannually on the 1st days of April and October in each succeeding year; that since the declaration shows that the premiums were only paid down to and including the 1st of April, 1891, and that there was a failure to pay the premium of October 1, 1891, under the terms of the policy the renewal effectuated April 1, 1891, expired April 1, 1892: that the failure of the defendant company to give the required statutory notice of the premium due October 1, 1891, could do no more than would have been done by the premium if paid, namely, to continue the policy in force until April 1, 1892, by the very terms thereof; that the stipulation on the part of the defendant company to renew the policy for another year from April 1, 1892, to April 1, 1893, depended upon the performance by the assured of a precedent condition, namely, the payment of the renewal premium of April 1, 1892, which condition not having been performed, the policy was, by its own terms, lapsed and forfeited.

The above statement of the third ground of demurrer is somewhat more specific than the demurrer itself, and comprehends a suggestion made at the argument, namely, that the failure of the insurance company to give notice of the forthcoming premium could have no more effect than the payment of the premium itself would have had; but it is a fair inference to be deduced from the groundwork of the demurrer, and is here stated in that form to exhibit more fully the cause of the demurrer.

Wilkerson & Pierson, for plaintiff.
Frank P. Poston, for defendant.

HAMMOND, J. (after stating the facts as above).   This demurrer must be sustained.   The plaintiff claims too much for the effect of the failure to give notice of the forthcoming premium due October 1, 1891.   It may be conceded, as it must be, that the 29 days of the actual notice is not the 30 days of the statute, and yet it does not follow that this policy of insurance was forever kept in force thereafter by that mere circumstance.   The forfeitures incurred in the failure to pay the subsequently accruing premiums of April and October, 1892, of April and October, 1893, and of April, 1894, must each depend upon its own circumstances, and neither of these failures can receive any aid from the failure to give notice of the premium due on the 1st of October, 1891.

The real question in this case is whether or not the failure to pay the premium due on the 1st of April, 1892, has been excused by any

averments of this declaration. But, before considering that question, it is well enough to note that, by the terms of this policy, these were not semiannual premiums. The premiums of the policy are annual premiums; but it is agreed that each premium may be paid "in semiannual equivalents," payable on the 1st days of April and October. Nevertheless, the whole policy shows that the groundwork of it is annual premiums, the importance of which distinction is apparent when the policy is read in reference to the statutory regulations involved in the controversy.

It was indeed decided in Fearn v. Ward, 80 Ala. 555, 562, 2 South. 118, that:

"The contract of life insurance has its inception in the issue of the policy, and is a complete and entire contract for the life of the assured, continuing during life, and payable at death when no earlier definite period is fixed, but subject to be discontinued by nonpayment of the premiums as agreed, such payments being conditions subsequent. The annual premium is not paid in consideration of insurance for a single year, and its payment is not a condition precedent to renewal. Each premium constitutes a part of the consideration of the contract as one and entire, and the amount is fixed and regulated by the prospective duration of the life of the assured, which enters as an element into the contract."

This also had been decided before, in the case of Insurance Co. v. Statham, 93 U. S. 24. It is admitted in this opinion that the contrary view has been taken by respectable authorities, but that is undoubtedly the general rule. However, this is to be understood only of the character of contracts involved in those cases where the insurance was of the form in controversy in those cases. To use the language of the Statham Case, "these policies did assure the life of the party named in a specific amount for the term of his natural life." And it is to that kind of a policy that those adjudications must be confined. They do not establish, and it cannot be affirmed, that all policies of insurance are in that form, or of that kind. And there is no reason why an insurance company and the party assured may not make an agreement for a policy of insurance from year to year if they choose to do so, and that is precisely what the parties to this contract did. If they had set to work to make a contract with the intention of putting it in a form that would obviate the ruling in those two cases, they could not more effectually have accomplished that purpose than they have by the language of the policy now involved. Its distinct promise to pay is at the death of the life assured, provided such death shall occur before 12 o'clock noon on the 1st day of April, 1890,—precisely one year from the date of the policy. This was an insurance for a single year, and no more. The next succeeding clause of the policy prescribing the terms upon which it might be extended distinctly says that such renewals shall be for each succeeding year of the life assured, from the date thereof. And the mere reading of the whole stipulation shows that the policy is an insurance for one year, with the right of renewal at the expiration of each year of insurance; and it is no more than this. There is no principle of law which disables the parties from making a contract like that, and therefore the decisions which have been cited do not apply to this case.

Under the New York statute of 1877 (chapter 321), quoted in the

foregoing statement, there would be no doubt, in my judgment, of the right of the plaintiff to recover on this policy. The proviso of the first section was not complied with, because there were only 29 days of notice given, stating when the next premium would fall due, by the letter which was mailed on the 1st day of September, 1891. This was distinctly decided in the case of Hicks v. Insurance Co., 9 C. C. A. 215, 60 Fed. 690, which decision is supported by the adjudications in the state of New York upon that subject. The premium falling due on the 1st of October, 1891, not being paid, did not cause a lapse of the policy, or entitle the defendant to declare a forfeiture, for it was only by giving a new notice under the main requirement of the act that the defendant company could have secured a lapsing or forfeit of the policy for the failure. It is not shown by anything in the record, and it was not pretended in the argument, that any such notice was given. Neither did the company give the notice required by the statute when the premium fell due on the 1st of April, 1892; nor the semiannual premium that fell due on the 1st of October, 1892; nor the semiannual premium that fell due on April 1, 1893; nor the semiannual premium that fell due October 1, 1893; nor that of April 1, 1894. As to none of these failures did the company take the pains to give the life assured or the beneficiary notice that a forfeiture would be claimed for such nonpayment, and, not having done this, they could claim no forfeiture for any of those failures, under the act of 1877.

But it is my opinion that the case is governed, not by the act of 1877, but by chapter 690 of the Acts of 1892, quoted in the foregoing statement. The date of the passage of that act does not appear, but, if it be assumed that it was passed on the very last day of the year 1892, it would govern the premium falling due April 1, 1893, October 1, 1893, and April 1, 1894, none of which were paid, and as to none of which, under the act of 1892, was the life assured or the plaintiff entitled to notice as prescribed by the act, because, as I have endeavored to show, this was "a term insurance contract for one year," which was especially excepted from the provisions of that act requiring notice to be given to secure a forfeiture on the part of the insurance company. I do not see that there is any room for doubt of this proposition.

But the plaintiff undertakes to escape a forfeiture under that act by contending that this policy is governed by the act of 1877, and not the act of 1892. The reasoning upon which this contention goes is that the provisions of the act of 1877 were incorporated by the statute into the policy with the same effect as if the provisions of that act requiring notice had been, in terms, written in the stipulations of the policy itself, and that the subsequent act of 1892 is of no effect, because it would be unconstitutional as applied to such a contract, by impairing its obligation. I cannot assent to this. If the provisions of the statute as to notice had been written in the policy as agreements of the parties, that would have been their contract, and, of course, the law could not make another contract for them; wherefore it would be enforced by the courts as the agreement of the parties. But the statute did not undertake to make a contract of insurance for the parties. It was only a statutory regulation for the government of insur-

ance companies, compelling them to give notice, as required by the act, of the nonpayment of premiums, before they would be allowed to declare a policy forfeited according to its stipulations. It was a regulation that the legislature had a right to make. It was a beneficent regulation for the relief against a forfeiture created under the contract, which it was entirely competent for the legislature to withdraw, alter, or amend, as to it might seem best. Surely, if we turn the principle contended for the other way, its operation would be denied by the plaintiff and her counsel; that is to say, if an insurance company should contend that at the time of the passage of the act it had already issued a policy defining the terms of forfeiture, and that it was not within the power of the legislature to impair the obligation of that contract, by importing into it a different stipulation or provision as to the conditions of forfeiture, the beneficiaries would deny that such legislation unconstitutionally impaired the obligation; but, if the legislature has the power to import into an existing contract such a regulation for giving notice without impairing the obligation of the contract as to the insurance company, it has the right to take it away by repeal, without impairing the obligation as to the beneficiary.

Judge Wallace says, in the case of Hicks v. Insurance Co., supra, that the policies, being New York contracts, were, of course, dominated by the statute respecting forfeitures as completely as though the statutory conditions had been explicitly incorporated in them. This is true only sub modo; but it was not the intention of the learned judge to declare that a repeal of a statute respecting forfeitures would impair the obligation of the contract. He had no such question as that before him, and the inference that is drawn from this segregated sentence of his is quite gratuitous. It must rest upon its own merits, and can have no aid from this sentence of that decision. Such statutes as these assume by their very existence that the parties have, by the terms of their contract, incurred a forfeiture, and they had no design of prescribing conditions under which a forfeiture should take place, but only those under which, by legislative bounty, the forfeiture should be condoned or relieved against after it had been incurred. They are not statutes of contract, but remedial statutes; and as to these the rule is that they are not a part of the obligation of the contract. It is not because of the effect of either of these statutes that we have under consideration that the plaintiff or the beneficiary has not incurred a forfeiture strictly according to the terms of the contract, but only that the legislature of New York, having authority over contracts made within the state of New York, has relieved her against a forfeiture so far as the statutes apply, but no further. One who grants a bounty may withdraw it; and it is a mistake to suppose that the right to it becomes perpetual because it has once been granted, where the nature of the gift is such that it must recur from time to time.

I do not see that the case of McCracken v. Hayward, 2 How. 608, cited by counsel for plaintiff, has any bearing on the question. In that case it was determined that a state law which prohibited property from being sold on execution at less than two-thirds of its appraised value impaired the obligation of contracts; and this, because the plain-

tiff had a right, at the time the contract was made, to a judgment and
execution according to the then-existing laws, which right was as es-
sential a part of the obligation of the contract as if it had been
set forth in its stipulations in the very words of the statute relating
to judgments and executions.    And, where the existing law allowed
the sale of defendant's property, to take that right away was to impair
the obligation of the plaintiff's contract.    But, before that, in the
opinion, the court had been very careful to say that this did not apply
to all state legislation on existing contracts as repugnant to the con-
stitution, and the court cited as illustrations such acts of the legis-
lature as recording acts under which an elder grantee would be post-
poned to a younger.    Though the effect of such a law is to render the
prior deed void as against a subsequent purchaser, it is not a law im-
pairing the obligation of contracts.    And so of statutes of limitations
and kindred acts.    It is said that the validity of such acts cannot be
questioned; that the time and manner of their operation, the excep-
tions to them, and the acts from which the time limited shall begin to
run, will generally depend on the sound discretion of the legislature,
according to the nature of the titles, the situation of the country, and
the emergencies which led to those enactments.    It is, in my judgment,
to this class of legislation that these New York statutes apply, and
not the other.    The court cites in support of this classification the case
of Jackson v. Lamphire, 3 Pet. 280, where it was held that a patent
of land from the state did not imply that the patentee or his assigns
should enjoy the lands free from legislative regulation, but only that
the state would not impair the force of the grant; and regulations re-
quiring them to be recorded, containing certain limitations as to time,
were held by the court not to impair the obligation, whether the act
of the legislature was one of limitations, or a recording act, or a law
sui juris, called for by the peculiar situation which invoked its enact-
ment.

In Insurance Co. v. Cushman, 108 U. S. 51, 65, 2 Sup. Ct. 245, the su-
preme court says:

"The laws with reference to which parties may be assumed to have con-
tracted were those which in their direct and necessary legal operations con-
trolled or affected the obligations of such contract."

And it was held that a reduction in the interest as between the pur-
chaser at the sale and the party entitled to redeem did not impair
the obligation of the contract.

In the case of Ewell v. Daggs, 108 U. S. 143, 150, 2 Sup. Ct. 413,
it was held that the repeal of a statute of Texas which made contracts
void for usury acted retrospectively, and took away the right of the
defendant to make the defense of usury, but that such repeal was not
legislation impairing the obligation of contracts.    Mr. Justice Mat-
thews uses this pertinent language:

"The effect of the usury statute of Texas was to enable the party sued to
resist the recovery against him of the interest which he had contracted to pay,
and it was in its nature a penal statute, inflicting upon the lender a loss and
forfeiture to that extent.    Such has been the general, if not the uniform,
construction placed upon such statutes.    And it has been quite as generally de-
cided that the repeal of such laws without a saving clause operated retro-
spectively, so as to cut off the defense for the future even upon actions upon con-

tracts previously made. And such laws, operating with that effect, have been upheld as against all objections on the ground that they deprived parties of vested rights, or impaired the obligation of contracts. * * * And these decisions rest upon solid ground. Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own; and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, as long as it remains in fieri, and not realized by having passed unto a complete transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur. That principle has been repeatedly announced and acted upon by this court. * * * The right which the curative or repealing act takes away in such a case is the right in the party to avoid his contract,—a naked legal right, which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect."

In the case of Gross v. Mortgage Co., 108 U. S. 488, 2 Sup. Ct. 947, the above case of Ewell v. Daggs was reaffirmed in its application to statutes which made valid contracts which had previously been invalid on account of their noncompliance with prohibitive acts of the legislature; and it is held that these subsequent statutes were not unconstitutional, as depriving the person of his property without due process of law; and Mr. Justice Harlan makes this observation in regard to such statutes:

"When the legislative department removed the inhibition imposed, as well by statute as by the public policy of the state, upon the execution of a contract like this, it cannot be said that such legislation, although retrospective in its operation, impaired the obligation of the contract. It rather enables the parties to enforce the contract which they intended to make. It is, in effect, a legislative declaration that the mortgagor shall not, in a suit to enforce the lien given by the mortgage, shield himself behind any statutory prohibition of public policy which prevented the mortgagee, at the date of the mortgage, from taking the title, which was intended to be passed as security for the mortgage debt."

Further quoting from a previous case, he remarks:

"It is not easy to perceive how a law which gives validity to a void contract can be said to impair the obligation of that contract."

Nor is it easy to see how a law which restores the stipulations of a valid contract, that have been interrupted by the operation of a statute, can be said to impair the obligation of a contract. Counsel on neither side have cited any case where the question of the impairment of the obligation of a contract in its application to statutes like these of the state of New York, requiring notice to be given before forfeiture of a policy of insurance can be insisted upon, has been considered or determined, and I have found none. But I feel quite sure that the principle enunciated by Mr. Justice Matthews in the case above cited fully applies to such statutes. These parties agreed that the nonpayment of the premium should work a forfeiture. The statute stepped in to relieve against the hardness of that contract, but it created no other or different contract from that which the parties had made. Hence the repeal of the statute only operated to restore the

stipulations of the agreement as made between the parties themselves.

It is my opinion that the New York act of 1892 operated to repeal the act of 1877 in the matter of statutory regulations concerning notice, and that by the act of 1892 this policy was especially excepted because it is "a term insurance contract for one year." It operated retrospectively, as the act of 1877 did, because by its very terms it applied to every policy thereafter issued or renewed. The regulations of these two acts as to the notice to be given applied to protect the beneficiaries upon premiums renewed upon policies already existing, as well as to premiums upon policies thereafter issued; and, of course, if the act applies to require notice as to previously existing policies, the later act, exempting these renewals from the requirements of notice, also applies to then-existing policies in its relation to the renewal of premiums. Therefore, when the plaintiff or the life assured did not pay the premiums accruing on the 1st of April, 1893, the 1st of October, 1893, and the 1st of April, 1894, the policy lapsed, and the forfeiture was complete, notwithstanding that no notice was given. Demurrer sustained, and suit dismissed, at plaintiff's cost.