# Fearn, Ex'r, *v.* Ward, Adm'r.

*Creditor's Bill to Subject Proceeds of Policy of Life Insurance on Deceased Debtor.*

1. *Assignment of judgment, on payment, to surety ; creditor's right to pursue equitable assets.*—When a judgment against principal and surety is paid by the latter, and then assigned to him by the plaintiff, the surety "may assert, in law or equity, any lien or right against the principal debtor which the plaintiff could assert if the debt had not been paid" (Code, § 3418); and he may therefore maintain a bill in equity to reach and subject property fraudulently conveyed by his deceased debtor while living, on averment and proof of a deficiency of legal assets.

2. *Proof of payment of premiums.*—When a creditor files a bill in equity, to reach and subject to the satisfaction of his debt the proceeds of a policy of insurance on the life of the deceased debtor in favor of one of his children, and the answers deny that the premiums were paid by the debtor, while the *onus* of proving payment is on complainant, positive proof is not required, but it may be established by circumstantial evidence; nor is it incumbent on him to show the sources from which the debtor derived the money.

3. *Policy of insurance by debtor, in favor of child, considered as voluntary conveyance at suit of creditors.*—A policy of insurance procured by a debtor on his own life, in favor of one of his children, not being within the protection of the statute (Code, §§ 2733-4), is a mere voluntary conveyance, and is void as against his existing creditors, though no fraud may have been intended.

4. *Who is creditor.*—When a surety pays a debt after it has been reduced to judgment, the payment relates back to the date of the suretyship, and constitutes him a creditor from that time, with the right to set aside any intermediate voluntary conveyance executed by his principal.

[Fearn, Ex'r, v. Ward, Adm'r.]

5. *Policy of insurance by debtor, in favor of child, considered as conveyance on valuable consideration.*—When a father, being indebted to one of his children, procures a policy of insurance on his own life in her favor, as security for, or in payment of his indebtedness, the transaction will be sustained against the attack of his other creditors, as being founded on valuable consideration, provided the limit of reasonable adequacy and sufficiency be not exceeded; but the relation of debtor and creditor does not exist between them, because he is indebted, as executor, to the estate of his deceased father, which was bequeathed to him and his mother equally, while his daughter is a legatee under the will of his deceased mother.

6. *Policy of life insurance; nature of contract.*—A policy of life insurance is not a contract of insurance for a single year, with the right or privilege of renewal annually, or as each premium becomes due and is paid; but is a single and entire contract, having its inception in the issue of the policy, continuing during the life of the assured (or other term), and payable at death, but subject to be discontinued by the non-payment of premiums as agreed.

7. *Same; extent of creditor's right to subject.*—After the death of the debtor, having procured a policy of insurance on his own life in favor of one of his children, an existing creditor may reach and subject in equity, not only the premiums paid by the debtor, but the proceeds of the policy to the extent of the debt; and the money having been loaned out on note and mortgage, by the guardian of the infant, the creditor may pursue it, and make the mortgage available for his own benefit.

8. *Revivor of suits, in law or in equity.*—The statute which requires actions at law to be revived within eighteen months after the death of a party (Code, § 2908), does not apply to suits in equity, but leaves them to be governed by rules which prevail in equity.

9. *Non-claim, as bar to foreclosure of mortgage.*—The failure to present the debt as a claim against the estate of the deceased mortgagor, within eighteen months after the grant of letters of administration (Code, § 2597), is no bar or defense to a bill for the foreclosure of the mortgage.

APPEAL from Marshall Chancery Court.

Heard before the Hon. H. C. SPEAKE.

This case came to this court upon a ruling of the chancellor on demurrer, and is reported in 63 Ala. Reports, page 33, where the nature of the suit fully appears. The present case is now before this court after final hearing on pleadings and proof—on its merits, at November term, 1884. It having been held, on demurrer, that the policy in this case being in favor of *one child* only, whilst the assured had a wife and several children, did not fall within the provision of the statute (§§ 2733-4, Rev. Code, 1876), the contention now is, whether the proceeds of the policy in question can be subjected to the demand of the complainant creditor upon principles independent of said statute. The chancellor decreed that the complainant was entitled to have the debt of his estate paid out of the proceeds of the policy of insurance on the life of the debtor, Robt. Fearn, and for that purpose directed a sale of the property embraced in the Donegan mortgage. This appeal is from that decree.

VOL. LXXX.

[Fearn, Ex'r, v. Ward, Adm'r.]

L. WYETH, HUMES, GORDON & SHEFFEY, and WATTS & SON, for appellants.—1. The failure of the complainant to revive his suit against the administrator and heirs of James Donegan, deceased, within eighteen months, operated a bar to the further prosecution of this suit. The charge of fraud creates no exception to the requirement of the statute of non-claim. *Yniestra v. Tarleton*, 67 Ala. 126; *Taylor v. Robinson*, 69 Ala. 269. When the statute of non-claim is pleaded the burden of proving presentation is on the creditor.—*May v. Parham*, 68 Ala. 253. 2. Robert Coles paid the last premium with his own means and for the beneficiary of the policy. This payment should not accrue to the benefit of Robt. Fearn or his creditors. The payment of each premium is a renewal of the contract of insurance, and, in a limited sense, the making of a new contract.—*Thompson v. Cundiff*, 11 Bush. (Ky.) 567; *Eq. L. Ass. v. McLennan*, 4 Cent. L. J. 150. The recovery by complainant in no event should exceed the amount of the premiums presumptively paid by Robt. Fearn, or the value of the policy when the last payment was made.—*Landrum v. Knowles*, 22 N. J. Eq. 594; *Leonard v. Clinton*, 26 Hun. 288–92; *Clark v. Durand*, 12 Wis. 223. If an insolvent husband or father pays premiums on a policy of insurance, the *amount so paid*, with interest, is liable to the creditors of the husband or father.—*In re Bean et al* (U. S. C. C. Dist. Miss.) 1 Cent. L. J. 607. See also, 2 Dillon C. C. 120; *Gould v. Emerson*, 99 Mass. 154; *Glanz v. Gloeckler*, 10 Ill. App. 484; *Ingles v. New Eng. Mut. L. Ins. Co.*, 27 Fed. Reporter, 249. 3. Appellee has failed to prove that the premiums paid upon the policy of insurance were paid by Robt. Fearn out of money belonging to him, which was liable to the payment of the debts of his creditors.—*Felrath v. Schonfield*. 76 Ala. 199–203. There is no absolute presumption of law that a voluntary conveyance made on a meritorious consideration is fraudulent and void as to existing creditors.—*Lerow v. Wilmarth*, 9 Allen, 382. 4. The record shows that the beneficiary of the policy, Kate Coles Fearn, was a *creditor* of the insured, and therefore the insurance was not voluntary, but was founded on a valuable consideration as between the insured and the beneficiary; and a failing creditor has the right to prefer one creditor to another.—*Crawford v. Kirksey*, 55 Ala. 282; *Chamberlain v. Dorrance*, 69 Ala. 40; *Hodges Bros. v. Coleman*, 76 Ala. 103; *Meyer v. Sulzbacher*, 76 Ala. 120. The case now presented is different from that made on former appeal on demurrer. There it was held that a *voluntary* conveyance was void as to existing creditors; here the proof shows that the beneficiary, Kate Coles Fearn, was a creditor for value. Then, by the averment, which the demurrer conceded, it ap-

[Fearn, Ex'r, v. Ward, Adm'r.]

peared that Robert Fearn had invested more than $500 annually in premiums on this policy; now, it is shown that that averment is untrue.    5. As to *constructive* as opposed to *actual* fraud, and effect, see *Wood v. Goff*, 7 Bush, 63; *Thompson v. Cundiff*, 11 Bush, 567; *Short v. Tinsly*, 1 Met. 404; *Boyd v. Dunlap*, 1 Johns. Ch. 478; *Clements v. Moore*, 6 Wall. 312; 19 Hun. 115.

CABANISS & WARD, *contra*.—1. The equity of this case is settled by *Fearn v. Wood, Adm'r*, 65 Ala. 33.    2. As to the controverted question of payment of premiums on policy of Robert Fearn, whether paid with his own means or otherwise, is plain by the evidence set out in the record.    3. As to fraudulent intent of Robert Fearn.  If Robert Fearn had been indebted to his daughter, Kate Coles Fearn, she could not have availed herself of that to defeat the resort of his creditors to property fraudulently conveyed to her.   A fraudulent or voluntary conveyance is good against the grantor and his creditors who do not assail it, subject to such creditors as choose to subject it to the payment of their debts.—Bump on Fraud. Con. (2d Ed.) 595; *Henriques v. Hone*, 2d Ewd. Ch. R. 123; 7 Paige, 503.    4. Complainant was not limited to the amount of premiums paid by Robt. Fearn on the policy.  The whole amount of the policy was subject to the payment of his debts. Bump. on Fraud. Con. 609.    5. The court erred in overruling the demurrer of Wm. H. Donegan, to the bill of review.—65 Ala. 501; 49 Ala. 403.    6. Statute of non-claim does not bar foreclosure of mortgage.—*Inge v. Broadman*, 2 Ala. 331; *Dooley v. Villalonga*, 61 Ala. 129–133.    7. Complainant was not a party to the suit of *Weeden, Adm'r, v. Robt. Fearn*, and was not bound by the decree.—*Bank v. Hodges*, 12 Ala.; *Humes, Assignee, v. Snuggs*, 4 Otto.   There was no error in final decree.—9 Ala. 463.

CLOPTON, J.—In July, 1873, Eliza Lee Fearn, as guardian of Kate Coles Fearn, received from the Peidmont and Arlington Life Insurance Company about nine thousand and five hundred dollars, being the proceeds of a policy of insurance, issued by the company in July, 1870, on the life of Robert Fearn.  The policy was payable to Kate Coles Fearn, who was an infant child of the assured.  Eliza Lee Fearn loaned eight thousand dollars of the money received on the policy to James J. Donegan, who executed to her a mortgage on real estate to secure the payment of the loan.  The bill is brought by appellee, as administrator of Thomas Fearn, to subject the money in the hands of Donegan to the payment of a judgment which was recovered by Eliza Levert, as exec-

[Fearn, Ex'r, v. Ward, Adm'r.]

utrix of Francis Levert, in April, 1871, against Robert Fearn.

The judgment was founded on a bond for the payment of money, made by Robert Fearn and Thomas Fearn in 1857, and payable twelve months after date. Complainant, whose intestate was a surety on the bond, paid the demand, and the judgment was assigned to him as such administrator by the attorneys of record of the plaintiff, as autorized by the statute. Robert Fearn died in March, 1873, and his estate has been declared insolvent. The bill alleges, and the proof shows, a deficiency of legal assets to pay the demand. By section 3418 of the Code, being the statute under which the judgment was assigned, the complainant is authorized to assert in law or equity any lien or right against Robert Fearn, the principal debtor, which the plaintiff in the judgment could assert, if the debt had not been paid. A court of equity will intervene at the instance of a creditor, on averment and proof of a deficiency of legal assets, to subject to the satisfaction of his debt property fraudulently conveyed by a deceased debtor in his lifetime.—*Battle v. Reid*, 68 Ala. 149; *Sharp v. Sharp*, 76 Ala. 312.

At the time the policy of insurance was procured, Robert Fearn had a wife and several children living. The policy was issued in favor of only one of his children. When this case was before the court on a former appeal, taken from a decree overruling a demurrer to the bill (65 Ala. 33), it was held, that the policy is not protected against the claims of creditors by the statute, which authorizes a married woman to cause the life of her husband to be insured for the benefit of herself and her children, free from the claims of the representatives of the husband or any of his creditors.—Code of 1876, §§ 2733, 2734. It is said: "The policy, in this case, was procured by the husband in favor of *one* of his several children. The statute designed it for the benefit of the *wife* and *children*. It is not, therefore, in compliance with the requirements of the statute, and is not such a policy as justifies the invocation of the statue for its protection." The equity of the bill was sustained, which involved the right of complainant to maintain the suit, and his title to relief, if the allegations were admitted or proved. The case, therefore, must be considered and determined on principles which apply, independent of the statute.

The denials of the answers made it incumbent on complainant to prove that the premiums were paid by Robert Fearn with his own funds; and it is insisted, that the evidence is insufficient to this end. Positive proof is not required. It may be established by circumstantial evidence. Neither is it incumbent on complainant to show the sources

from which he derived the money. The agent of the company testifies, that all the premiums were paid by Robert Fearn, either in person, or by others for him. He was engaged in cultivating, in partnership with Ferguson, a large plantation from 1866 to 1872, inclusive. Humphrey, the agent of the commission merchants of the partnership, states that he made advances to Fearn, and paid premiums to the insurance company, which were charged to Fearn & Ferguson, and which they shipped cotton to meet. Eliza Fearn, his wife, and Coles, his brother-in-law, and the administrator of his estate, both state they do not know from what source he derived the money to pay the premiums. The last premium was paid by Humphrey, and charged to Coles. On this evidence, we are forced to conclude, in the absence of opposing or explanatory proof, that Robert Fearn paid with his own funds all the premiums, except the last. The effect of the manner, in which the last premium was paid, will be considered hereafter.

The procurement of the policy of insurance by Robert Fearn in favor of his child, and the payment of the premiums with his funds, constitute a gift to her, a voluntary conveyance based on parental affection, which is void as to his existing creditors, though no fraud may have been intended. It is a voluntary provision, effected by converting to her benefit money, which in equity and good conscience should have been paid to his creditors. Though the law regards the parental duty of maintenance, and the consequent duty of making provision for the future, when the father may no longer exercise protecting care, it subordinates the discharge of these duties to obligations to his creditors; and declares void, as to them, any voluntary appropriation of property, not authorized by legally expressed exemptions, or privileges, generally allowed on considerations of public policy. The bond, on which complainant's intestate was surety, had pre-existed, and was existing at the time of, the creation and issue of the policy. The subsequent payment of the debt relates to the date of the suretyship, and constitutes him a creditor, who may avoid a fraudulent conveyance, though made during the period his claim was contingent.—*Jenkins v. Lockard*, 66 Ala. 377; *Keel v. Larkin*, 72 Ala. 493. Whether complainant be regarded as a simple-contract creditor, or his rights arise from the provisions of the statute by authority of which the judgment was assigned to him, he is entitled to avoid, as offending his rights, the policy of insurance, unless some superior or equal equity of the beneficiary supervenes.

Such equity is claimed to arise on the following facts: Robert Fearn, Sr., died in 1856, leaving a will, bequeathing

and devising his entire estate to his wife, Eliza Maria Fearn and Robert Fearn, who qualified as executrix and executor. Eliza Maria Fearn died in 1865, having made a will, giving her property in equal shares to Eliza Lee Fearn and her four children, Kate Coles Fearn being one of the children. Robert Fearn continued to act as executor of his father's will until October, 1870, when he resigned, and Weeden was thereafter appointed administrator *de bonis non* with the will annexed. Weeden, as such administrator filed a bill against Robert Fearn for a final settlement of his administration of the estate of his father. Robert Fearn having died pending the suit, it was revived against Robert Coles as his administrator, against whom a decree was rendered in December, 1873, for about the sum of fifty-four thousand dollars. It is insisted, that on these facts, Robert Fearn was indebted to Kate Coles Fearn, when he caused the policy to be issued in her favor; that he had in possession funds, which equitably belonged to her, out of which he paid the premiums, and that thereby a title to the policy vested in her immediately on its issue, founded on a valuable consideration.

A failing or insolvent debtor has the right to prefer, within proper bounds, one or more creditors to the exclusion of the others; and if it is true, that Robert Fearn was indebted to his daughter, he had the right to cause a policy of insurance on his own life to be issued in her favor, as security for, or in payment of such indebtedness, provided the limit of reasonable adequacy and sufficiency was not exceeded. And it may be, that her guardian having possession of the proceeds of the policy, a court of equity, in the absence of actual fraud, would regard her equity as equal to that of complainant, and require satisfaction of her demand, though the policy was intended as a voluntary provision.—*Oliver v. Moore*, 23 Ohio St. 473. But is she a creditor in the meaning of these rules? She is not a legatee or devisee under the will of Robert Fearn, Sr., and has no claim or right to any of the property of his estate as such. The decree and the proceeds thereof constituted assets of his estate, the legal title to which was in his administrator, to whom the debt was due and payable. She could have maintained no suit to make Robert Fearn account for a *devastavit* as executor of his father's estate, and was incapable of acquitting or discharging him from such liability or any part thereof. Her claim is under the will of Eliza Maria Fearn, to whose personal representative Weeden must account for her portion of the personal assets of the estate of Robert Fearn, Sr. The relation of creditor and debtor does not arise on the facts; and we would have considered it unnecessary to allude thereto, had not counsel strenuously contended for such

36

relation as creating an equity in favor of Kate Coles Fearn. The same observations apply to the asserted equity, based on the possession, and use in the payment of premiums of trust funds. The relation of trustee and *cestui que trust* did not exist between Robert Fearn as the executor of Robert Fearn, Sr., and Kate Coles Fearn as legatee and devisee under the will of Eliza Maria Fearn. Furthermore, it appears from the record, that Robert Fearn resigned his executorship in October, 1870. Only one premium had been paid on the policy in question prior to his resignation—the premium paid in August, 1870, at the time the policy was issued. The other premiums were paid subsequently, and when he did not have possession or control of the estate; and there is no evidence satisfactorily showing, that he ever used the funds of the estate in the payment of any premiums.

But if it were true, that Robert Fearn was indebted to Kate Coles Fearn, the extent of her equity would be the payment of such indebtedness. As the estate of Robert Fearn, Sr., owed no debts, Robert Fearn was entitled, under the will of his father, to one-half of the proceeds of the decree, and by a sale of his interest in real estate, twenty-five thousand dollars were realized and paid on the decree. The amount of indebtedness, if any, is her distributive share, being one-fifth, of the difference between the sum of one-half of the decree and the sum paid by the sale of the real estate. After satisfying the demand of complainant, there will remain, in the possession of her executrix, of the proceeds of the policy, more than enough to pay this amount.

The remaining questions are, the measure and kind of relief, to which the complainant is entitled—whether to subject the proceeds of the policy, or only a sum equal to the amount of the premiums paid by Robert Fearn with interest, and to enforce the payment by a foreclosure of the mortgage? Appellants contend, that the measure of relief is the amount of premiums paid with interest; and rest the contention on the proposition, that a contract for life insurance is an insurance for one year, with the privilege of continuing it in force by successive periodical payments of premiums; that is, each payment is a renewal of the contract, and in a limited sense, the making of a new contract. Though this view has been taken by respectable authorities, we think the position can not be maintained. The contract of life insurance has its inception in the issue of the policy, and is a complete and entire contract for the life of the assured, continuing during life, and payable at death, when no earlier definite period is fixed, but subject to be discontinued by non-payment of the premiums as agreed, such payments being conditions subsequent. The annual premium is not paid

in consideration of insurance for a single year, and its payment is not a condition precedent to renewal. Each premium constitutes a part of the consideration of the contract, as one and entire, and the amount is fixed and regulated by the prospective duration of the life of the assured, which enters as an element into the contract. As has been said : "The whole premiums are balanced against the whole insurance." On this character of the contract, depends its continuance in force by a mere waiver of the discontinuance which would otherwise ensue on non-payment of the premiums; and on this construction are founded the decisions of this court, respecting the interest which vests, when the policy is issued, in the person for whose benefit it is taken out.—*N. Y. Life Ins. Co. v. Statham*, 93 U. S. 24; *Drake v. Stone*, 58 Ala. 133. It follows, that the payment of the last premium, if made by Coles under the circumstances, and for the benefit of the persons as testified hy him, does not materially change the nature of the provision. The payment was made without the request, consent, or knowledge of the assured, or of the beneficiary. Payment by a stranger, without any agreement or understanding with the person entitled to its benefit, confers no interest or title to the policy. Bliss on Life Ins. § 328. The last payment was made by Humphrey to the agent of the company on his own responsibility, and charged in a memorandum to Robert Fearn, and afterwards, by direction of Coles, was charged to him. Such assumption of the payment does not operate to render unavailing the provision by Robert Fearn, and convert the policy into a provision as made by Coles. His right or claim does not exceed reimbursement or the amount paid.

The courts, which construe the contract of life insurance as an insurance for a single year with a right or privilege of renewal, may consistently hold, that the creditor can only subject the amount of premiums paid by the assured with interest; but from our construction of the contract, the liability of the insurance, procured by the use of the means of the debtor, seems to logically follow. Property received by the grantee in exchange for that fraudulently conveyed, will stand in place of the conveyed property, and may be subjected by the creditors of the grantor.—*Abney v. Kingsland*, 10 Ala. 355. If money belonging to a debtor, which should be paid to his creditors, is used in the purchase of property for the benefit of another merely on a good consideration, the property purchased becomes the property of the debtor, as to his creditors.—*Pinkston v. McLemore*, 31 Ala. 308. A father, who procures a policy of insurance to be issued on his life payable to his child, and pays the premiums with his own money, makes a voluntary gift or assignment of a portion of his estate, which consti-

tutes an investment for the benefit of the person in whose favor the policy is issued. There can be no difference in principle between a policy thus procured, and the assignment of a policy originally issued in his own name. On the death of the beneficiary, whether before or after the death of the assured, the fund arising therefrom will go by bequest or succession, as other personal assets of the beneficiary.—*Drake v. Stone, supra.* The insurance constitutes the property purchased, and is the subject-matter of the investment. If the father be in debt, such voluntary investment is fraudulent in law as to his existing creditors, without regard to his intent, or to his circumstances and condition as to ability to pay.—*Caldwell v. King,* 76 Ala. 149; *Anderson v. Anderson,* 64 Ala. 403. In such case, the donee will be regarded as a trustee of the investment for the benefit of the creditors of the donor. *1*

The cases in some of the States, which limit the relief to the amount of premiums, are founded on local statutes. We have no statute prescribing the measure of recovery in cases like the present; but by the statute, which authorizes a married woman to procure insurance on the life of her husband, freed from the claims of his creditors, the amount of annual premiums which he may pay, is limited to five hundred dollars; and it is provided that if he exceeds the limits, the exemption shall apply to such insurance in the proportion of five hundred dollars to the amount of premiums paid, without declaring what disposition shall be made of the excess of insurance. Under this statute, it has been held, that if he exceeds the limits, the statute intervenes and devotes the excess of insurance to the payment of his debts, on the ground, that the statute fixes a limit, beyond which the husband can not pass in paying premiums from his own funds, which should be appropriated to his creditors. *Stone v. Knickerbocker Life Ins. Co.,* 52 Ala. 589. This judicial interpretation of the statute can be maintained only on the principle, that without the statutory intervention and exemption, the whole of the insurance would be subject to the payment of the debts of the husband. On settled principles, the conclusion follows, that if the subject of the gift or investment consists of a policy of insurance on the life of the debtor, the donee is liable for the money recovered on the policy. *Stokes v. Coffey,* 8 Bush. 533; *Elliott's Appeal,* 50 Penn. St. 75; Bliss on Life Ins. § 356.

It being shown, that the guardian of the beneficiary loaned to Donegan eight thousand dollars of the money recovered on the policy, complainant may follow it into his hands, and make available the mortgage given as security for its payment. Section 2908 of the Code, requiring suits to be revived within eighteen months after the death of a party, refers to actions at

[Wartensleben v. Haithcock et al.]

law, and does not apply to suits in chancery. Courts of equity in the matter of the revival of suits, are governed by their own rules of limitation. The limitation usually is the time required to bar the cause of action, but subject to the discretion of the court, and may be diminished, when necessary to subserve the purposes of justice.—*Ex parte Kirtland*, 49 Ala. 403. The failure to present the claim against Donegan's estate within eighteen months after the grant of letters of administration does not bar complainant's right to a foreclosure of the mortgage.—*Inge v. Boardman*, 2 Ala. 331; *Ware v. Curry*, 67 Ala. 274; *Barker v. Flinn*, 61 Ala. 530.

Affirmed.