# Lehman *et al. v.* Gunn *et al.*

*Bill to Subject Policy of Insurance to Payment of the Debts of the Insured.*

1.  *Voluntary conveyance; void as to existing creditors.*—As against existing creditors a voluntary conveyance by the debtor is in law *per se* fraudulent and void. The nature and form of the conveyance or the ways and means employed in bestowing the

[Lehman *et al.* v. Gunn *et al.*]

gift or donation is immaterial. It is enough if the thing given be liable to the satisfaction of the demands of creditors to render the conveyance void.

2. *Policy of insurance; subject to payment of debts of insured; when.*—Where a person takes out a policy of insurance on his life payable to beneficiaries therein named, the policy or the insurance which it represents is the subject matter of the gift and not the premium; and as to the existing creditors of the donor the donees will be regarded as trustees for their benefit, the insured having paid the premiums out of his own funds.

3. *Same.*—It is immaterial whether a creditor who takes out a policy of insurance on his life pays the premium in cash or executes his note therefor so far as the claims of existing creditors are concerned. In either case they can subject the insurance money to the payment of their debts, since the fund to which they have the right to look for the payment of their claims may be diminished by the fraudulent creation of additional claims against it, as well as by the improper diversion of assets which constitute it.

4. *Same; rights of creditors arise on death of insured.*—The rights of existing creditors to proceed against the fund arising from an insurance policy of their debtor the premiums on which were paid by the debtor, arises upon the death of their debtor, and cannot be affected by the fact that another pays a premium note given by the insured, after his death, as an act of generosity to the beneficiaries named in the policy.

APPEAL from Jefferson Chancery Court.
Heard before Hon. J. C. CARMICHAEL.
The facts are fully stated in the opinion.

H. K. WHITE and JAMES A. MITCHELL, for appellants. (1). Winton's creditors had the right to subject the policy of insurance taken by him for the benefit of his father. The father occupied no better position than he would have occupied had the policy been payable to Winton and then transferred by him.—*Fearn v. Ward*, 80 Ala. 564; *Drake v. Stone*, 88 Ala. 133; *Pinkston v. McLemore*, 31 Ala. 308; *Friedman Bros. v. Fennell*, 94 Ala. 570; 50 Pa. St. 88. (2). The fact that the premiums were paid out of money exempt to Winton makes no difference, since exemption is personal to the debtor and ceases to exist as a right at his death.—*Fellows v. Lewis*, 65 Ala. 343; *Martin v. Crosby*, 11 Lea

[Lehman *et al.* v. Gunn *et al.*]

198. (3). See also *Tompkins v. Levy*, 87 Ala. 363, on effect of statutes providing that a person may insure for the benefit of another.

II. C. SELHEIMER and A. LATADY, *contra*, contended that if the premiums on the policy had been paid by the appellee or some one who did not look to the assured for reimbursement the creditors could not have been injured, citing, *Fearn v. Ward*, 80 Ala. 563; *Roberts v. Winston*, 45 S. W. Rep. 673.

DOWDELL, J.—The bill in this case is filed by the creditors of George T. Winton deceased, and seeks to subject to the payment of their claims and demands as such creditors the proceeds of a policy of life insurance issued on the life of said Winton by the Mutual Benefit Life Insurance Company of Newark, New Jersey, in December, 1895, and in which said policy T. J. Winton and Sarah F. Winton, the father and mother of the insured, were named as beneficiaries. A motion was made to dismiss the bill for want of equity, which was sustained by the chancellor, and from that decree this appeal is prosecuted.

The bill charges that at the date of the issuance of the policy the said George T. Winton was indebted to complainants in the sums and manner alleged, and also, that he was at that time wholly insolvent, and that the making of the policy payable to his father and mother was a voluntary conveyance or gift of the insurance covered by said policy, and therefore fraudulent and void as to creditors. The bill also, avers that the policy was applied for, purchased and received by the said George D. Winton and that the premium thereon which was divided into quarterly installments, was paid for in the following manner: the first installment being for the sum of $29.65 was divided into a cash premium of $20.76, and a premium loan of $8.89, that for the cash premium, the insured gave to one Halstead the local agent of the defendant company, and through whom the insurance was negotiated, his personal check on the Berney National Bank, with which the insured did his business, and for the *premium loan*, executed

[Lehman *et al.* v. Gunn *et al.*]

his promissory note to the Insurance Company. It is also averred, that at the time of the giving of the check for the cash premium, the said Halstead remitted the amount of the cash premium to his company, out of his own funds, holding the check as his individual claim against the said George T. Winton. On the 15th of January, 1896, within a month after the policy was taken out, Winton died, and at the time of his death the check in question had not been paid, but for what reason is not stated in the bill. Letters of administration were granted in February, 1896, on the estate of Winton to the respondent W. R. Gunn, who immediately entered upon the discharge of his duties as administrator. It is alleged that Gunn knew that his intestate's estate at that time was totally insolvent, and he was also notified and informed that the creditors were claiming the insurance covered by the policy in question, and it is also charged that the defendant Insurance Company likewise had knowledge of the claims of these creditors, at the time and before it made the compromise settlement charged. Shortly after the grant of letters of administration the said Gunn sought out Halstead and took up the check which Winton had given, paying for the same out of his own funds, and it is charged in the bill for the purpose of preventing said check being presented as a claim against the estate of Winton. In March following the grant of administration, the administrator Gunn having the policy of insurance in his possession for collection, went to the State of Tennessee, where the beneficiaries named in the policy resided, and there received on said policy from an agent of the defendant company $2500, that being one half of the amount of said insurance, in settlement of said policy and delivered the said policy up to the company; that out of the $2500 so collected he, Gunn, retained $1000 paying over the remainder, $1500 to T. J. and Sarah F. Winton, the beneficiaries named in the policy. Subsequently the estate of George Winton was decreed insolvent, and a final settlement of his administration was made by Gunn, but no accounting was had by him for any money collected on said policy. The bill also charges that the settlement had by the Insurance Company

[Lehman *et al.* v. Gunn *et al.*]

with said Gunn and the beneficiaries in the State of
Tennesessee was a collusive one. We have not under-
taken to set out here all of the averments of the bill,
but only so much as we deemed necessary for the appli-
cation of the legal principles involved in the contro-
versy.

It will be observed from the foregoing statement of
facts that there is nothing to bring the case within the
influence of either section 2535 or 2607 of the Code of
1896. The beneficiaries named in the present policy
fall without the class of persons named in the former
section; and the transactions, the subject of this suit,
arose prior to the enactment of the latter statute. So
the solution of this case must depend upon the law, as
it is, independent of these statutes.

As against existing creditors a voluntary conveyance
by the debtor, is in law *per se* fraudulent and void, with-
out regard to the intention of the debtor, is a proposi-
tion too familiar and well settled to require citation of
authority. The nature and form of the conveyance, or
the ways and means employed in bestowing the gift or
donation is immaterial. It is enough if the thing given
be liable to the satisfaction of the demands of creditors,
to render the conveyance void.

In the solution of this case some difficulty will be
obviated, by first determining what it is that the debtor
has conveyed or donated. It must be conceded that the
benefits to be derived under the present policy by the
beneficiaries named therein, proceed from the acts of the
insured, who procured the policy. The policy was is-
sued by the company for a valuable consideration, the
consideration moved from the insured and not from the
beneficiaries. It cannot be doubted that if the policy
had been taken out and payable to the estate of the in-
sured, and subsequently by him transferred as a gift to
his father and mother, that such a transaction would
have been void as against existing creditors. So too,
though the policy be issued in favor of the father and
mother, if the premiums be paid out of the funds of the
debtor, will the transaction be void as against exist-
ing creditors.—*Fearn v. Ward,* 80 Ala. 560; *Friedman
Bros. v. Fennell,* 94 Ala. 570.

It is contended by appellee, however, that as the check given by the insured to the agent Halstead, was never paid out of the funds of Winton during his life, nor presented as a claim against his estate, but was gratuitously paid by the administrator Gunn out of his own funds, that no injury resulted to the creditors by any diversion of assets of the debtor, to which they had the right to look for the satisfaction of their demands; that fraud without injury affords no ground for relief to the creditor. It is a well settled principle, that fraud and injury must co-exist to create a cause of action or ground for relief, but the fallacy of appellee's contention rests in the misapprehension as to wherein the injury arises in the present case.

The policy or the insurance which it represented, was the subject matter of the gift and not the premium —the premium is used in the purchase of the property donated, and it is in the gift of this property so purchased that the creditor complains that he has been injured. In *Fearn v. Ward, supra,* this court said: "The insurance constitutes the property purchased; and is the subject matter of the investment. If the father be in debt, such voluntary investment is fraudulent in law as to his existing creditors, without regard to his intent, or to his circumstances and condition as to his ability to pay. In such case, the donee will be regarded as a trustee for the benefit of the creditors of the donor," citing *Caldwell v. King,* 76 Ala. 149, and *Anderson v. Anderson,* 64 Ala. 403.

Under the facts in this case, when the policy was delivered to the insured, he having executed his note for the *premium loan* and given his check for the cash premium to the agent, which was held by the agent as a claim against the insured, he having paid out of his funds the cash premium to his company, the contract of purchase of insurance was complete, and a vested interest in the insurance arose to the beneficiary, subject, of course, to the conditions and stipulations contained in the contract. And if the beneficiary named in the policy be a mere donee, his interest in the insurance will be postponed to the claims and demands of existing creditors of the donor. The insurance being the sub-

[Lehman *et al.* v. Gunn *et al.*]

ject matter of the gift by the debtor, as to the rights of creditors, it is immaterial whether the purchase of the insurance be made by the debtor for cash or on credit, the principle remains the same. The right of creditors to proceed against the fund for the satisfaction of their demands, arises as soon as the insurance becomes due and payable under the stipulations of the contract of insurance. Under the present policy the insurance was payable at death, and upon the happening of that event, the right of the creditors of insured to proceed to sub-ject the insurance to the satisfaction of their debts arose. The payment by the administrator Gunn of the check given by Winton to Halstead could not under the law alter the terms of the contract of insurance or affect the rights of parties thereunder, nor could it impair the rights of creditors arising upon the death of Winton It cannot be denied that if Winton had paid the premium in cash out of his own funds that this would have been a diversion of assets to which his creditors had a right to look for the payment of their debts, and the fact that the amount in question was small cannot vary the principle. It is the deminution of the fund to which the creditor had the right to look for the payment of his demand, that gives him the right to complain. The fund may be diminished by the improper diversion of assets which constitute it, or by fraudulently creating additional claims against it. In other words, the diminution may result by either diminishing the dividend or increasing the divisor. If the *dividend* be diminished by an improper diversion of his assets by the insolvent debtor, the creditor may in a court of equity follow the same into the hands of a donee or fraudulent grantee, and subject to his demand not only the assets themselves so diverted, but also the profits and increase growing or springing out of their use. So if the insolvent debtor by way of credit creates a valid claim against himself or his estate, thereby augmenting the divisor, which in effect is equivalent to diminishing the dividend, and at the same time making a donation to another of the property acquired by the credit given him, upon plain equitable principles the creditor should have the right to subject the property thus created and acquired in the hands of a donee or fraudulent grantee.

It cannot be denied that when Winton received the policy of insurance and gave his check to Halstead, who immediately remitted out of his own funds the cash premium to the Insurance Company, that upon the dishonor of the check by the bank, a valid claim or demand arose in favor of Halstead against Winton for the amount of the check or cash premium so paid. Halstead became the creditor of Winton for that amount, and the claim was a valid one against the estate of Winton at his death. He, Halstead, was entitled to share with other creditors in the assets of the common debtor's estate. The shares of the other creditors were thereby diminished by the augmentation of the divisor through the fraud, actual or constructive, of the debtor. If the wrong and injury to the creditor be accomplished through the fraud of the debtor, actual or constructive, it is immaterial what form it assumed, equity will deal with the facts, the substance, without regard to forms or shadows. Halstead held the dishonored check as a claim against the common debtor Winton, and after his, Winton's death, Gunn the administrator of Winton's estate paid this debt. It is insisted that inasmuch as the claim was never filed against the estate, and having been gratuitously paid by Gunn out of his own funds, that no injury resulted to the creditors. As we have said above, the rights of the creditors to proceed against the fund arose upon the death of Winton, and of which they could not be deprived by the gratuitous act of the administrator, whose duty it was to collect and preserve the assets of his intestate's estate for the benefit of creditors. If the right of the creditor to subject the fund to his demand arose upon the death of Winton, then it became a vested right, and its termination or continuance did not and could not depend upon the mistaken generosity of the administrator in the gratuitous payment out of his own funds of Halstead's claim. Our attention has been directed by counsel for appellee, to the case of *Roberts v. Winton*, 45 S. W. Rep. 673. It appears from the opinion in that case, that the insurance was purchased with property exempt to the debtor under the law. That is a question not presented by the record in this case, and we decline to express any

opinion upon it. The reasoning employed by the court in *Roberts v. Winton, supra,* upon the proposition of a purchase by an insolvent debtor, of life insurance on a credit basis, is not in harmony with the views we have hereinabove expressed and we therefore decline to follow that case as authority.

Taking the allegations of the bill as true, upon the death of Winton the insurance became a trust fund for the benefit of his creditors, and all parties dealing with such a fund with notice may be held to an accounting. The chancellor erred in sustaining the motion to dismiss the bill for want of equity and the decree must be reversed.

Reversed and remanded.

Sharpe, J., not sitting.