*153 So. 189*

## LOVE et al. v. FIRST NAT. BANK OF BIRMINGHAM et al.

### 6 Div. 447.

Supreme Court of Alabama.
Jan. 11, 1934.

Rehearing Denied March 15, 1934.

Howze & Brown, of Birmingham, for appellants.

Cabaniss & Johnston, Stokely, Scrivner, Dominick & Smith, and K. E. Cooper, all of Birmingham, for appellees.

260

BOULDIN, Justice.

The bill is in the nature of a creditor's bill to subject the proceeds of certain life insurance policies to the payment of the debts of the insured.

The appeal is from a decree sustaining demurrers going to the equity of the bill.

The substance of the bill, so far as essential to a consideration of questions involved, may be stated as follows:

On and prior to March 25, 1929, W. C. Gewin, now deceased, was indebted to complainant, Penn Mutual Life Insurance Company, on which there still remains an unpaid balance of $23,437.60; and was also indebted to complainant, John T. Love, in the sum of $3,500, which is still unpaid.

On said March 25, 1929, the debtor, W. C. Gewin, held, in various companies, policies of insurance on his life, aggregating $274,000. The designated beneficiaries therein were as follows:

The estate of the insured, policies aggregating $136,000; American-Traders' National Bank, policies aggregating $100,000; Lessie M. Gewin, wife of the insured, policies aggregating $23,000; beneficiary unknown, policies aggregating $15,000.

We gather from briefs that the beneficiaries in these last-named policies were the children of the insured, making an aggregate of $38,000 payable to wife and children.

On said date, March 25, 1929, the insured executed to American-Traders' National Bank an instrument in writing, made exhibit to the bill, styled a "Life Insurance Trust," reciting that said W. C. Gewin is the insured in the several policies listed therein; that insured has reserved the right in each policy to change the beneficiary therein; that the insured desires that the proceeds of such policies shall be held by the trustee, American-Traders' National Bank, or its successor, upon the trusts hereinafter set forth, and accordingly the insured has instructed, or is about to instruct, the several companies to substitute said trustee or its successors for the beneficiaries named in the policies.

It is then stipulated that all sums paid to the trustee under the policies shall be received and administered by the trustee as a trust estate. Then follows:

"(a) The Trustee shall pay all bank loans which I may owe at the time of my death.

"(b) The trustee shall hold the balance of the Trust Property in trust for the use and benefit of Lessie M. Gewin, wife of the insured, and his children, share and share alike."

Numerous details touching the management of the trust in favor of the wife and children are unimportant here.

Section 16 of the trust deed reads: "The Insured reserves the right at any time and from time to time, without the consent of any person and without notice to any person other than the Trustee, to revoke the Trusts hereby created, to change the terms or the beneficiaries hereof and/or to withdraw the whole or any part of the Trust Fund by filing written notice of such revocation, change and/or withdrawal with the Trustee. The Insured further reserves the right to surrender any policy mentioned herein for cash, receive payment of dividends, obtain loans thereof and receive any and all benefits under the policies mentioned therein."

The bill avers that in accordance with the trust agreement the insured had the beneficiary in each of the policies changed to American-Traders' National Bank of Birmingham, as trustee; that the insured died July 15, 1929, and shortly thereafter the American-Traders' National Bank, as such trustee, collected from the several insurance companies sums aggregating $253,677.99, of which the sum of $167,250.89 was applied to the payment of the indebtedness of the insured to said bank at the time of his death, leaving a balance of $86,427.10, which is still held and being administered by the trustee under the trust agreement.

It is averred that American-Traders' National Bank was, after the death of the insured, merged with the First National Bank of Birmingham; that on July 26, 1932, the estate of W. C. Gewin was declared insolvent in the chancery court of Jefferson county, and First National Bank of Birmingham was appointed administrator of the insolvent es-

tate, and is still acting as such; that said bank denies that the proceeds of such life insurance policies are assets of the estate, and, as administrator, refuses to institute proceedings to recover same for the estate. The First National Bank, individually, as trustee, and as administrator, together with the widow and children of the insured, are made parties respondent.

Sections 13 and 14 of the bill read:

"13. Complainants aver that the transfer of said policies to said Bank as Trustee is void as to complainants' debts as above set forth in its entirety, in that there was no consideration for the transfer of said policies in excess of the amount which might have been due the Bank at the time said trust agreement was made, and was void as to the amount of said bank loans, for the reason that the said W. C. Gewin reserved in said trust the absolute power of revocation; but if complainants are mistaken in this aspect of the bill, they allege that the transfer of said policies to the Bank as Trustee is void as to complainants' debts to the extent of the excess of the amount collected on said policies above the amount collected on said policies which were payable to the wife of the said W. C. Gewin at the time said transfer was made, for the reasons above set forth.

"14. Complainants aver that prior to the adjudication of insolvency, their claims were valid and not barred by the Statute of Nonclaims, and that since said adjudication their claims were duly presented and filed as required by law against the insolvent estate of W. C. Gewin, deceased."

The bill prays for "a decree declaring void and cancelling said trust agreement and subjecting the proceeds thereof to the payment of the claims of complainants, as well as to the payment of the claims of such other creditors of the said W. C. Gewin who may be entitled to and who do become parties complainant to this proceeding," and for general relief.

The primary question is: Does the bill contain equity? Is the insurance fund, in whole or in part, subject to the payment of complainants' demands?

In Alabama all property, legal or equitable, not exempt by law, is subject to the payment of debts. This is so fundamental as to have the sanction of a fixed public policy.

As a corollary, no gift or voluntary conveyance of his property can defeat his existing creditors. It is constructively fraudulent, regardless of intent. This on the broad ground that one must be just before he is gen-

erous. No matter what form the transaction may take, some form of remedy is provided to reach the case and protect creditors. Taylor v. Harwell, 65 Ala. 1, 13; Smith v. Moore, 37 Ala. 327; Rugely & Harrison v. Robinson, 10 Ala. 702.

Life insurance is deemed a species of property, the subject of fraudulent conveyance. A policy taken out and premiums paid for by a debtor for the benefit of a named beneficiary as a gift is property subject to the law of voluntary conveyances, constructively fraudulent as against his existing creditors.

In many states, probably the majority rule is to reach and subject the proceeds of the policy to the extent of the money paid in premiums, with interest. See notes, 31 A. L. R. 51, and 34 A. L. R. 838.

But in Alabama the rule has been firmly settled, since Fearn, Ex'r, v. Ward, Adm'r, 80 Ala. 555, 2 So. 114, that money put into life insurance is an investment; that the insurance is property purchased by such investment, and, although subject to policy conditions as to lapse and forfeiture, the death benefit, when it becomes a fixed demand on the death of the insured, is, in its entirety, subject to the claims of existing creditors of the insured.

This rule is said to be the logical sequence of our statutes of long standing, whereby one may through life insurance accumulate an estate, limited in amount, for the benefit of the wife and children of the insured. This is declared to be exempt from the payment of the debts of the insured, implying that all not so exempt, to whomsoever payable as a mere gift, may be subjected, in equity, to the payment of the debts of the insured. Stone v. Knickerbocker Life Insurance Company, 52 Ala. 589; Friedman Bros. v. Fennell, 94 Ala. 570, 10 So. 649; Tompkins v. Levy, 87 Ala. 263, 6 So. 346, 13 Am. St. Rep. 31; Hall & Farley v. Ala. Ter. Imp. Co., 143 Ala. 464, 39 So. 285, 2 L. R. A. (N. S.) 130, 5 Ann. Cas. 363; Lehman v. Gunn, 124 Ala. 213, 27 So. 475, 51 L. R. A. 112, 82 Am. St. Rep. 159; McCrory v. Donald, 192 Ala. 312, 68 So. 306; Beall & Coston v. Lehman Durr Co., 110 Ala. 446, 18 So. 230; Martin v. McDaniel & Son, 170 Ala. 270, 53 So. 790; Fearn, Ex'r, v. Ward, Adm'r, supra; Kimball v. Cunningham Hardware Company, 192 Ala. 223, 68 So. 309; Id., 197 Ala. 631, 73 So. 323; Pope v. Carter, 210 Ala. 533, 98 So. 726; Cook v. Clark, Davis & Co., 212 Ala. 257, 102 So. 213; Ex parte Wilkinson, 220 Ala. 529, 126 So. 102.

Applying the law to the case made by the

bill, we observe that, at the time the trust agreement was made, more than half the insurance, $136,000, was payable to the estate of the insured.

Assuming that this insurance, along with the $100,000 already payable to the bank, was lawfully pledged, as security for the bank's debt of $167,000, and further assuming that the $38,000 payable to the wife and children was and continued to be exempt to them under the statute, there remains in the hands of the trustee $48,427.10, which under the deed of trust is held for the use and benefit of the wife and children.

It is definitely settled that a policy payable to one's estate cannot by assignment or change of beneficiary be brought within the statutory exemption. Cases supra.

Much less so if the policies in which they are named beneficiaries equal or exceed such exemption.

We are clear to the conclusion that under the averments of the bill this sum of $48,-427.10 is subject, in equity, to the payment of complainants' demands, and those of other creditors entitled to participate. To this extent the trust deed was infected with constructive fraud.

It follows there was error in sustaining the demurrers addressed to the equity of the bill as a whole.

Appellants insist the deed of trust is fraudulent and void in toto, and the entire proceeds of the insurance policies are subject to the claims of existing creditors of the grantor.

The insistence is based on paragraph 16 of the trust agreement, above copied, wherein a power of revocation, a right to change beneficiaries, and right to the cash values of the policies are reserved in the grantor, the insured.

Dealing first with the $38,000 originally payable to the wife and children, or so much thereof as was exempt from the indebtedness of the insured, we regard the deed of trust and change of beneficiary as one transaction, designed to put the trustee in position to collect the insurance on the death of the insured, and hold in trust for the use of the wife and children proceeds which proved to be in excess of the policies in which they were theretofore the named beneficiaries.

The statute, Code, § 8277, merely requires that the insurance be for the benefit of the wife and children.

Because the insured may deem it to their interest to name a trustee to receive and manage the fund for their benefit does not defeat the purpose of the statute.

So much as was exempt to them when the deed of trust was made is still exempt, unless defeated by other provisions of the instrument.

Our later decisions, in view of the purpose of the exemption statute to permit the insured to make reasonable provision for the maintenance of his wife and children after his death, a matter of sound public policy, have given the statute a liberal construction.

So we have held, and now hold, that neither the reserved power to change the beneficiary nor the reservation of a personal interest in the cash values stipulated in the policies, neither of which was ever exercised, will stamp the transaction as fraudulent and void as against creditors of the insured. Young v. Thomason, 179 Ala. 454, 61 So. 272; Kimball v. Cunningham Hardware Company, 197 Ala. 631, 73 So. 323; Id., 192 Ala. 223, 68 So. 309.

It follows the amount exempt to the wife and children under section 8277 of the Code is not subject to the claims of creditors of the insured.

Touching the $167,000 applied to the payment of the indebtedness of the insured to the American-Traders National Bank, as per the terms of the trust agreement, we observe the transaction in this regard was, in equity, an assignment of the policies in the nature of collateral security for the indebtedness of assignor.

There was a valuable consideration, and such assignment can be avoided by creditors of the assignor only upon grounds of actual fraud.

In the nature of the case an equity remains in the assignor, which, if not concealed by a conveyance absolute in form, is as available to creditors as before.

For example, a reservation of the cash values of the policies. If these were subject in equity to the claims of creditors before the trust agreement, they remained so. On the death of the insured they ceased to exist, and the entire property values now involved are the proceeds accruing, and becoming a fixed amount, upon the death of the insured. The trust agreement made no change as to reserved benefits. The policy provisions were recognized and remained as before.

Appellants stress the power of revocation retained in paragraph 16 of the trust

agreement. Reliance is had upon Code, § 6927, which reads: "When the grantor in any conveyance reserves to himself, for his own benefit, an absolute power of revocation, such grantor must be taken as the absolute owner of the estate conveyed, as to the rights of creditors and purchasers."

Conveyances coming under this section pass no title to the grantee as against creditors of the grantor. It is not a fraudulent conveyance which needs to be set aside in equity, but no conveyance at all so far as creditors of the grantor are concerned.

Thus, in Alford v. Alford, 96 Ala. 385, 389, 11 So. 316, 318, a proceeding by the administrator of the estate of the grantor to sell lands for the payment of the debts of the estate, despite an outstanding deed of trust with absolute power of revocation, it was said: "The land described in the deed of the decedent and his wife to Echols, as trustee, because of the reservation to the decedent of an absolute right of revocation, remained subject to his debts, and could be sold for the payment thereof in the administration of his estate. So far as the right to sell it for the payment of debts was concerned, it made no difference whether the power of revocation was executed or not." See, also, Blackwell v. Harbin, 186 Ala. 531, 65 So. 35.

So, if this trust instrument is within the above statute, it should be treated in equity as if it never existed in so far as creditors of the estate are concerned, and the proceeds of policies payable to the estate when the trust instrument was executed should be be brought in as assets of the insolvent estate of the insured and devoted to the payment of all indebtedness payable in regular course of administration.

The bill does not seem to be framed on such theory, but under the general prayer, or by amendment, such relief might be decreed.

But we are not impressed that this section of the Code has application here. We are dealing with life insurance; death benefits coming into being on death of the insured.

A revocation of the trust agreement would not be for the insured's "own benefit," but merely shift the benefit from one beneficiary or set of beneficiaries to another. Such insurance benefits, in the nature of life insurance, are not for the benefit of the insurer, but the result of outlays by him while living, for the benefit of others after he is dead, generally for the sake of those having the highest claims upon his care and providence.

No less meritorious are the claims of those who have made loans upon the security of such policies.

In discussing "reserves to himself, for his own benefit," in the statute, this court said of the deed involved in Blackwell v. Harbin, 186 Ala. 533, 65 So. 35, 36: "The reservation made was for the benefit of the grantor. As provided therein, the power reserved was with the evident purpose to restore the beneficial interest to the grantor. There is no indication of intent to vest a benefit in, or to confer a benefit upon, any other person."

A revocation of the trust agreement would, as to the fund here involved, have been wholly for the benefit of others, as above noted. The power of revocation ceased with the death of insured—the date when complainants' demands against these funds accrued. Lehman v. Gunn, 124 Ala. 213, 27 So. 475, 51 L. R. A. 112, 82 Am. St. Rep. 159.

 Assuming, without deciding, that this statute covers personalty, and includes conveyances as security for debt,, we conclude that, for reasons above indicated, this statute is inapplicable, and the unexecuted power of revocation merely weakened the security for bank loans, subjecting it to divestiture, if indeed it was intended to apply to such security. Frick v. Lewellyn (D. C.) 298 F. 803, 810; 37 C. J. 435.

 Reverting to the sum of $48,000, which we have held subject to complainants' demands, we do not overlook the argument of appellees in brief to the effect that, considering the trust instrument as a whole, it was executory in character, was in the nature of a covenant to make a trust, etc.

Suffice to say appellees claim the trust agreement became fully effective at the date of the death of the insured. This result could only arise from what was done by the insured in his lifetime.

 True, this fund came into being upon his death. Creditors' right of action therefor did not arise until that event. Lehman v. Gunn, 124 Ala. 213, 27 So. 475, 51 L. R. A. 112, 82 Am. St. Rep. 159.

But it is none the less true that the parties entitled thereto are to be determined by the transaction set up in the bill. The argument on this line may suggest inquiries as to the proper dating of such fraudulent conveyance as affecting the creditors to be classed as existing creditors.

We note that the basis of the whole doctrine has been stated to be the investment of moneys which in equity and good conscience should be devoted by the insured to the pay-

ment of his debts, but instead are devoted to the acquiring of property in the form of insurance to pass as a gift to others. It may be well, therefore, to ask why this should not apply to creditors prejudiced by such appropriations from year to year, maybe up to the death of the insured.

If so, should not all creditors whose debts were contracted while premiums are being paid to keep the insurance in force be classed as existing creditors when dealing with the property so acquired?

Many of our decisions speak of such funds as subject to the debts of the insured in general terms. But this question may not arise in the instant case, and is not decided.

Appellees call attention to the Act of October 28, 1932 (Acts 1932, Ex. Sess., p. 190), purporting to amend Code, § 8277. Whatever be the validity or construction of this rather involved statute as affecting the existing law of fraudulent conveyances or exemptions to wife and children, it can have no application to this case. This fund had accrued and the rights of creditors in the specific property had vested on the death of the insured prior to the amendatory statute. To so construe the act as to defeat such claims would subject the act to attack as violative of the Federal Constitution (article 1, § 10, subd. 1), forbidding state laws impairing the obligation of contracts. Gunn v. Barry, 15 Wall. 610, 21 L. Ed. 212; Wilson v. Brown, 58 Ala. 62, 29 Am. Rep. 727; Nelson v. McCrary, 60 Ala. 301; Fearn v. Ward, Adm'r, 65 Ala. 33.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.