## SHEPPARD, ET AL. v. IVERSON.

12   97
143   474
143   476

1. Equity has jurisdiction to set aside the fraudulent transfer of a debt reduced to judgment, although the party may also be entitled to a legal remedy by a garnishee process, against the fraudulent transferee.
2. When an insolvent father, pending a creditor's suit against him, transfers to his son, notes, &c. to the value of $2200, of which $1500 only are on solvent persons, and receives from him transfers of accounts for $2400, of which from $1600 to $2000 are good, it is fair to infer a secret trust between the parties, and that the assignment by the father was made to delay, &c., the creditor suing.

Writ of Error to the Court of Chancery for the 9th District.

THIS bill is filed by Iverson against Edmund Sheppard, William P. Sheppard, and E. A. Dunn, and H. Moore. Its object is to obtain satisfaction of a judgment obtained by Iverson against Edmund Sheppard, and one Lore, by setting aside the assignment and transfer of a judgment in favor of said Sheppard, against Dunn and Moore, made by Sheppard to his son Wm. P. Sheppard, in fraud, as the bill alledges, of the complainant, and to prevent him from subjecting the debt to the payment of his judgment.

The answers of the Sheppards deny any fraud, and assert the fairness and validity of the transfer. The history of the transaction, as given by them, is this: Previous to the 19th April, 1842, the younger Sheppard was practising as a physician in the vicinity of Irwinton, and debts to the amount of some $2400 dollars were due him on account. He was about to remove to a place in Georgia, about one hundred miles distant, and transferred them to his father in consideration of an assignment of certain demands amounting to about $300 less than the medical accounts, and including the one sought to be made subject to the complainant by this bill. One reason assigned for the exchange is, that the accounts were due from persons scattered over the country, and difficult of collection, on account of the smallness of the sums.

The proof taken in the cause, establishes that the following demands were transferred by the elder to the younger Sheppard, as the consideration for the accounts, to wit:

An order on J. M. Moore, ..................... $378
A note on W. Wellborn and E. A. Dunn, for ........ 780
　　"　　Wm. Wellborn, for.................. 394
　　"　　W. S. Paullin and David Lore, .......... 260
　　"　　Morgan, Paullin & Hopkins, ........ ...... 220
　　"　　David Lore, for ..................... 200

Amounting in all, exclusive of interest, to .......... $2232

The three last demands the witnesses consider as valueless, or nearly so, and judgment was recovered on that against Wellborn for only $70. All the witnesses concur, that the

estimated value of these demands was between $1400 and $1560. The complainant's witnesses, two in number, assert their belief that the solvent medical accounts transferred did not exceed $700. Those for the defendants, with equal positiveness, value the solvent demands at from $1600 to $2000, and are four in number. The judgment against the elder Sheppard was obtained in August, 1842, and the suit was in progress at the time of the assignment. Most of the witnesses concur, that the medical accounts were more valuable to the elder Sheppard than to any other person, from the circumstance that he kept a wharf and warehouse, and thus could engage the debtors to work out the debts.

The chancellor considered the exchange of the demands by the elder Sheppard as colorable only, and fraudulent as to complainant, and decreed accordingly.

It is now assigned that this decree is erroneous.

PECK, for the plaintiff in error.

No counsel appeared for the defendants in error.

GOLDTHWAITE, J.—1. At first, we were inclined to think, that under the case made by the bill, the complainant had an adequate remedy at law, by garnishee process, but further reflection has convinced us, that even if this remedy could be effectively pursued, it does not follow he may not also proceed in equity to set aside the fraudulent assignment, and thus reach assets which in reality belong to his debtor. Fraud is one of the original grounds upon which courts of equity have always considered themselves as entitled to entertain jurisdiction. [Daniel's Ch. Prac. 611; Story's Eq. § 184.] We conclude therefore that it is no objection to this bill, that the party might have redressed himself by pursuing his legal remedy. [See, also, Mariott v. Givens, 8 Ala. 694, § 4.]

2. The merits of the controversy involve no other questions than those of fact, or inferences from facts. If the transaction between the two Sheppards was to be determined alone by the supposed inadequacy of the medical accounts, the plaintiff would fail, for conceding the witnesses in his behalf assert the value of them to be but $700, those for the

defendants are equally positive in fixing it from $1600 to $2000, and are double the number of those who hold the other opinion. We do not think, however, the value of the demands received by either party, a matter of much importance, except as furnishing a means by which to ascertain whether or not a secret trust is to be inferred, as between the parties. It will be seen the nominal amount of the demands on each side was much the same thing, and most probably if the interest on the notes transferred by the elder Sheppard is a subject of conjecture, (for the proof is entirely silent,) they may be assumed as equal. It is clear also, that more than $600 of these notes were worthless. Now what reason can be assigned in a *bona fide* transaction, for the desire to acquire paper of this character? If any can be given, it certainly is not disclosed by the proof. Then again the evidence abundantly shows, that the father assisted the son in his medical practice, and the son his father in the wharf and warehouse business. It is strange, with these proper feelings between them, that the father should trade for accounts worth, according to the estimate of his own witnesses, from $1600 to $2000, and only allow from $1400 to $1560. In the ordinary transactions between such near relations, it might be supposed the father would be as willing to aid his son in the collection of these demands as to create them. It is very difficult to conceive, that in such an arrangement between those parties, there was not either an express or tacit understanding that the sum to be secured on either hand should be made equal, and when it appears to have been made a short time only before the debtor's capacity to assign might have been affected by garnishee process, and when the debtor was actually insolvent, the reasonable conclusion is, the transfer was intended, not to advance the interest of the son, but to defeat the father's creditor.

We think the chancellor took the proper view of the evidence. Decree affirmed.