# Hall & Farley, Trustees *v.* Alabama Terminal & Improvement Company.

*Bill in Equity to Subject Property Fraudulently Conveyed.*

1. *Fraudulent Conveyances; choses in action.*—A chose in action was not within the purview of the statute of 13 Elizabeth, against fraudulent conveyances, until after the passage of the "Judgment Act," 1 & 2 Victoria; but, since this latter enactment, they have been uniformly held to be within the scope of the former.

[Hall & Farley, Trustees v. Alabama Terminal & Improvement Co.]

2   *Same; same.*—The statute of 13 Elizabeth, directed against
    fraudulent conveyances, is part of the common law of this
    State, and the statute, Code, sec. 2156, is but declaratory of the
    common law, and under that section, and sections 2171 *et
    seq.*, choses in action are personal property within the mean-
    ing thereof.

3.  *Equity jurisdiction; remedy at law; fraudulent conveyance;
    choses in action.*—The remedy in chancery, by bill to subject
    property fraudulently conveyed, cannot be allowed as to tan-
    ·gible property, and denied as to intangible property, with any
    show of reason; hence, where a chose in action has been as-
    signed with intent to hinder, delay or defraud creditors, they
    may file a bill to reach such assets, although they have a
    remedy at law by suit and garnishment, wherein the *bona
    fides* of the assignment may be inquired into, and, if found
    fraudulent, the assignment be disregarded.

4.  *Same; same; same; garnishment.*—The original garnishment
    act of 1818 made no provision by which the *bona fides* of an
    assignment of a chose in action could be inquired into, and,
    if fraudulent, the assignment set aside, and this defect in the
    remedy at law was not cured until the amendment of the gar-
    nishment laws of 1840. The creation by statute of this legal
    remedy did not oust the pre-existing equity jurisdiction.

5.  *Same; same; same.*—A creditor with a lien has the same right
    to subject to his debt property fraudulently conveyed by the
    debtor, as is given to a creditor without a lien by section 818
    of the Code.

6.  *Fraudulent conveyance; corporations.*—The purchase by a cor-
    poration of shares of its own capital stock is a fraud upon
    its creditors, since the transaction involves a transfer of as-
    sets to the stockholder, and the acquisition by the corpora-
    tion, instead of the assets thus diverted, of a mere right to
    re-issue such shares, which right is of no value, as assets,
    to the creditors.

7.  *Same; same.*—Money is leviable property, and money paid by a
    debtor corporation for shares of its own stock is property
    fraudulently transferred, so far as creditors of the corpora-
    tion are concerned; so too, investment bonds of another cor-
    poration, owned by the debtor corporation; also, notes or ob-
    ligations of a subscriber to the capital stock, for the amount
    due upon his subscription. And money so paid, or such in-
    vestment bonds, or notes, or obligations for subscription
    which are transferred by the corporation in payment for pur-
    chase of shares of its own capital stock, may be proceeded
    against by a creditor of the corporation, by bill in equity, to
    30s.

set aside the transfer as fraudulent, and subject the assets to the payment of the debts of the corporation.

8. *Same; same.*—An arrangement, whereby a debtor corporation, for the purpose of releasing and acquitting a solvent subscriber to its stock from his obligation to pay for the same, accepts the obligation of a known insolvent person, to whom the subscriber had transferred his stock, and thereupon releases the solvent subscriber, is in legal effect a transfer of property by the corporation to the solvent subscriber without consideration, and is void as to creditors of the corporation.

9. *Same; collateral security.*—The general title to a chose in action, which has been transferred as collateral security for a debt, remains in the assigning debtor. The creditor has a lien on the chose, and should he be dispossessed thereof by the deceit of the debtor, he may, at his option, assert his lien thereon, or proceed against the debtor, treating the assigned chose as the unincumbered property of the debtor. But, should the creditor seek to enforce his lien on the chose in action, his remedy is at law, and not by bill to subject it as property fraudulently conveyed by the debtor.

APPEAL from Chancery Court of Montgomery.

Heard before the Hon. W. L. PARKS.

This bill was filed by J. L. Hall, L. B. Farley and H. M. Hall, as trustees, and as assignees of a judgment re-recovered by the Farley National Bank against the Alabama Terminal and Improvement Company. The said Terminal Company, the Farley National Bank, J. W. Woolfolk, A. C. Saportis, J. M. Henderson and Fox Henderson, partners under name of J. M. Henderson & Co., and Charles Henderson, Jerre C. Henderson, Lafayette Henderson, surviving partner of the late firm, L. & W. J. Henderson, Gustavus Hendricks, John L. Carroll and Thomas Murphree, partners under name and style of Carroll, Murphree & Co., O. C. Wiley, and O. C. Wiley and Clarence Murphree, partners under the name of Wiley & Murphree, and Thomas K. Brantley and Thomas K. Brantley, Jr., partners under the name of T. K. Brantley & Son, were made defendants.

The object of the bill is to subject, to the judgment held by complainants, the unpaid subscription to the capital

[Hall & Farley, Trustees v. Alabama Terminal & Improvement Co.]

stock of the Alabama Terminal and Improvement Company, given by defendants, which it was alleged in the bill had been transferred or assigned with the intent to hinder, delay, or defraud the creditors of said Terminal Company. After setting out the various subscriptions by the several defendants, the bill, as to Wiley and Murphree, alleged that the subscribers, with intent to defraud, had transferred their subscriptions to known insolvent persons, and, by false representation that they had been paid, prevailed upon the complainants to surrender the notes given for the subscription which had been, prior to that time, assigned to them as collateral security for the debt of said Terminal Company. As to some other of said subscribers to the capital stock, the bill alleged that an agreement was made between them and the Terminal Company, for the purpose of shielding the subscribers and defrauding the creditors of said Company, by which the subscribers paid the amount of their subscription in cash, and, thereupon, the company immediately bought of them their shares, giving therefor certain bonds owned by the Terminal Company, issued by the Alabama Midland Railway, at a valuation of 85 cents on the dollar. As to others, the allegation was that the Terminal Company had purchased the shares from the subscribers, giving its notes therefor, and delivering, as collateral security, assets of the company, and that such notes had been paid by devoting the collaterals thereto. As to some, the allegation was that the notes or obligations given for the subscriptions had been fraudulently satisfied by giving fictitious credits to the subscribers.

The chancellor dismissed the bill for want of equity, and therefrom the complainants appealed.

GUNTER & GUNTER and HORACE STRINGFELLOW, for appellants, cited:—Code, sections 818, 2156, 2171; Bump on Fraudulent Conveyances (2nd ed.), 236; *Weingarten v. Marcus*, 121 Ala. 190; *Lehman v. Meyer*, 67 Ala. 402; *Jones v. Smith*, 92 Ala. 455; *Rice v. Eiseman*, 122 Ala. 347; *Builders & Painters Supply Co. v. First Nat. Bank*, 123 Ala. 203; *Phillip v. Ash*, 63 Ala. 418; *Henderson v. Hall*, 114 Ala. 601; S. C., 126 Ala. 431.

[Hall & Farley, Trustees v. Alabama Terminal & Improvement Co.]

A. A. WILEY, for O. C. Wiley and Wiley & Murphree, R. L. HARMON for other appellees, and W. S. THORINGTON, generally, *contra*, cited:—*Henderson v. Hall*, 134 Ala. 455; rule 114, page 1227 of Code; *Foster v. Napier*, 73 Ala. 606; 54 Ala. 254, 256;*Youngblood v. Youngblood*, 54 Ala. 489; *Smith v. Cockrell*, 66 Ala. 77, 78; *Tillison v. Ewing*, 87 Ala. 350; *Merritt v. Ehrman*, 116 Ala. 289; *Peeples v. Burns*, 77 Ala. 292; *Askew v. Myrick*, 54 Ala. 30, 32; *Janney v. Buell*, 55 Ala. 408, 410; *Simmons v. Bull*, 21 Ala. 501; 22 A. & E. Enc. L. 1387; *Henry v. Murphy*, 54 Ala. 246; *Nicrosi v. Irvins*, 102 Ala. 648; *Jones v. Massey*, 79 Ala. 370.

McCLELLAN, C. J.—The statute of 13 Elizabeth, entitled "An Act against Fraudulent Deeds, Gifts, Alienations, etc.," was, in a sense, the progenitor, and is the prototype of our statute on the same subject, which is now embodied in section 2156 of the Code.

By that statute—13 Elizabeth—it was "Declared, ordained and enacted  *  *  *  *  * that all and every feoffment, gift, grant, alienation, bargain and conveyance of lands, tenements, hereditaments, goods and chattels, or any of them, or of any lease, rent, common or other profit or charge out of the same lands, tenements, hereditaments, goods and chattels, or any of them, or of any lease, rent, common or other profit or charge out of the same lands, tenements, hereditaments, goods and chattels, or any of them, by writing or otherwise, and all and every bond, suit, judgment and execution at any time had or made sithence the beginning of the Queen's Majesty's Reign that now is, or at any time hereafter to be had or made, to or for any intent or purpose to hinder, delay or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures, heriots,  mortuaries and  reliefs, shall be from henceforth deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns and every of them, whose actions, suits, debts, accounts, damages, penalties, forfeitures, heriots, mortuaries and reliefs, by such guileful, covinous or fraudulent devices and practices, as is aforesaid, are, shall, or might be, in any ways

disturbed, hindered, delayed or defrauded) to be clearly and utterly void, frustrate and of none effect; any pretence, colour, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding."

At the time of this enactment—1570,—and for more than two centuries afterwards, choses in action were not leviable by execution or other process under English law. Nor was that species of property strictly within the letter of the statute. Upon these considerations, and mainly upon the first, the act being intended to aid creditors to the subjection only of fraudulently conveyed or transferred property which could have been levied upon in the hands of the debtor, it was uniformly held, so long as there was no right or remedy given the creditor against the choses in action of the debtor, that such property was not within this statute, and, of consequence, that transfers of choses in action were in no wise affected by it.

It was while this state of law obtained, and with reference to this immunity of choses in action from process for the payment of debts, that Lord Thurlow, declining to annul as fraudulent the transfer of a chose in action, used the expression quoted in the opinion of the chancellor in this cause: "It would be preposterous and absurd to set aside an agreement which, if set aside, leaves the stock (indebtedness) in the name of the person where you could not touch it." The justness of this declaration is obvious in view of the then non-liability to the debt of the choses in action, even in the hands and name of the debtor. That was the consideration which constrained the Lord Chancellor to refuse to set aside the transfer, and, in doing so, he acted in consonance with the settled doctrine of the English courts in the premises.

So the law stood in England, till the reign of Victoria. But, by the "Judgment Act" of 1 & 2 Victoria, choses in action of the debtor were made liable for his debts, and provision was made to reach and subject such property by a special sort of levy and return, and "A charging order" of the court thereon. Since this enactment it has, with like uniformity, been held that choses in action are to be considered as "Goods and chattels" under the

act of 13 Elizabeth, and that covinous transfers of them
are "Void, frustrate and of none effect" against creditors
of the transferror. This conclusion was reached and
has been steadily adhered to, notwithstanding such
property is neither "Goods" nor "Chattels" strictly
speaking, upon the consideration that the broad purpose
of the act of 13 Elizabeth was beneficent to the suppres-
tion of fraud, and the conservation of the rights of cred-
itors against all property subject to execution in the
hands of the debtor by giving them a remedy to pursue
and subject all such property which shall be fraudulently
conveyed or transferred by the debtor, and that to these
ends the statute should be liberally construed so as to
extend its operation to any species of property not lev-
iable at the time of its enactment, but made so by subse-
quent acts of Parliament. Thus, it has been said of this
act—13 Elizabeth—that "Its simplicity and—if the ex-
pression may be allowed—its expansiveness have enabled
the judges to bring within its scope, and extend its opera-
tion to, almost every kind of transaction resorted to by
debtors to the prejudice of their creditors," and that it
"Cannot receive too liberal a construction, or be too
much extended in suppression of fraud." So, in *Twyne's
case*, it was resolved that "Because fraud and deceit
abound in these days more than in former times, all
statutes made against fraud should be liberally and bene-
ficiently expounded to suppress fraud." And the doctrine
of the extension of the statute has been thus concretely
stated: "The principle is, that to convey away any prop-
erty, against which execution can issue, is a fraud on
creditors, but not a conveyance of that which they could
not (but for the conveyance) have touched; so that, by
successive statutes giving creditors power over different
kinds of property, the operation of the statute of 13
Elizabeth c. 5, has been gradually extended."

This intangible property—choses in action—being
thus brought within the act of 13 Elizabeth through the
leviable quality attached to it by the act of 1 & 2 Victo-
ria, the remedy of the judgment creditor upon the fraud-
ulent transfer of such property was and is in the law of
England the same remedy that he had and has to the
subjection of tangible property—goods and chattels,

[Hall & Farley, Trustees v. Alabama Terminal & Improvement Co.]

strictly so called—fraudulently transferred by the debt-
or, namely, by bill in chancery,—upon the return of an
execution "No property,"—to set aside the transfer and
subject such choses in action to the satisfaction of the
judgment. Nor was it ever supposed, but the ruling has
been to the contrary, that the existence of a remedy,
by special statutory proceeding at law for the subjec-
tion of such property, operated to exclude the remedy in
equity for its application to the judgment.

It is also the settled law in England that, under the
Statute of 13 Elizabeth, since choses in action were made
leviable by the act of 1 & 2 Victoria, "The forgiveness by
a debtor of a debt due *to* him," that is, the
covinous cancellation and surrender as paid of
a bond or note, for example, by the judgment
debtor to his debtor, involving as between them
the discharge of the latter from the obligation, is a fraud-
ulent transfer which the judgment creditor may have
set aside in equity, and thereupon hold his debtor's
debtor to account for the amount of said debt. Each of
the foregoing propositions is supported by the text and
citations of Worthington on Fraudulent Conveyances
and Statutes of Elizabeth, pp. 1, 2, 4, 5, 6, 17, 18, 20, 21,
22-3-4, 33, 555.

It is of no importance to us whether the statute of
13 Elizabeth was the ordination of original law, or
merely declaratory of existing common law in England.
Whatever may be the solution of that somewhat mooted
question, that enactment, antedating as it did the first
English settlement in the territory now constituting the
United States, and "Being applicable to our situation
and not inconsistent with our institutions and govern-
ment," became a part of the common law of this country
and of the Mississippi Territory, then composed in part
of the territory subsequently erected into the Alabama
Territory and now embraced in the State of Alabama.
So far from its ever having been repealed, it was in sub-
stance and almost literally re-enacted by the legislature
of Mississippi Territory in 1803, was the statute law of
that Territory when Alabama Territory was carved out
of it, became thereupon the statute law of Alabama Ter-
ritory, formed a part of the statute law of the State of

Alabama on its admission to the Union, and has continued so to be, being now, as we have seen, embodied in section 2156 of the Code. Being a re-enactment of an English statute which was a part of the common law of this country, it has justly been held to be but declaratory of existing common law.—*Anderson v. Hooks,* 9 Ala. 704, 709.

The "Judgment Act" of 1 & 2 Victoria, whereby choses in action were made leviable and thereby brought within the act of 13 Elizabeth, not being the law of England at the time of the first English settlement in this country— 1670—was not part of our common law heritage and did not become the law of this State. But we have, and for many years have had, a statute of our own providing for the subjection of choses in action of the debtor to the satisfaction of his debts, by process of garnishment. All the considerations upon which the English courts proceeded in holding that the statute of 1 & 2 Victoria, by making choses in action leviable in a special way, operated to bring them within the act of 13 Elizabeth against fraudulent transfers, etc., are equally potent to the conclusion that, since the enactment of our statute making choses in action leviable in a special way, that species of property may be the subject of fraudulent transfers under the common law as it came to us from England; and so, of course, those considerations drive with equal force and certainty to the conclusion that choses in action are within our statute—Code, § 2156—against fraudulent conveyances and transfers considered in connection with our statutes—Code §§ 2171 *et seq.*—providing for the subjection of such property to the payment of debts, and this whether section 2156 of the Code be taken as merely declaratory of the common law, or as the original ordination of law. This conclusion, indeed, is plainer and more obvious in respect to our statutes, than it was in respect to the statutes of 13 Elizabeth and 1 & 2 Victoria, since, in order to extend the statute of Elizabeth to choses in action after that species of property had been made liable for debts by the act of Victoria, it was necessary to do some apparent violence to the letter of the older statute by holding that its words

"Goods and chattels" embraced choses in action, which in strictness thev do not; while not even this apparent violence is necessary to bring choses in action within the corresponding words of our statute, "Personal property," for they are *personal property* as essentially as goods and chattels are personal property in the ordinary acceptation of the word.

The foregoing considerations without more would suffice to enforce the conclusion that choses in action are within our statute against fraudulent conveyances and transfers; but there are more; Section 2 of the Code, so far as pertinent here, is as follows: "The following words have in this Code the signification attached to them in this section, unless otherwise apparent from the context: ' 1.   The word 'property' includes property, real and personal.   2.   The words 'personal property' include money, goods, chattels, things in action and evidences of debt, deeds and conveyances."   Section 2156 of the Code declares: "All conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property, and every charge upon the same made with intent to hinder, delay or defraud creditors, purchasers, or other persons, of their lawful suits, damages, forfeitures, debts or demands; and every bond, or other evidence of debt given, suit commenced, decree or judgment suffered, with like intent, against the persons who are or may be so hindered, delayed, or defrauded, their heirs, personal representatives and assigns, are void."   And section 818 of the Code relating to the creditor's remedy for the subjection of fraudulently conveyed property, employs only the words "Any property" to cover the subject-matters of such conveyances and transfers.   Surely there is nothing in the context of section 2156 to exclude choses in action from the words "personal property" there employed, nor anything in the context of section 818, which, of course, relates to the same property dealt with by section 2156, to exclude personal property, or choses in action as a species of personal property, from the words "Any property" employed in that section.   The terms, history and construction of the statute of 13 Elizabeth, taken in connection with the act of 1 & 2 Victoria, to all of which we have

[Hall & Farley, Trustees v. Alabama Terminal & Improvement Co.]

adverted, demonstrate the absence of all reason to exclude choses in action from sections 818 and 2156 of the Code. The makers of the Code have certainly in one instance, and possibly in many, outside of section 2, given a very clear indication that they conceived the words "Personal property" to embrace choses in action, for they deemed it necessary to expressly except "Things in action" from those words where they declared that executions may be levied "On personal property of the defendant."—Code, § 1890.

It has been several times held that choses in action are "Personal property" under the exemption statutes of the Code.—*Kennedy v. Smith,* 99 Ala. 83; and that they are personal property within our statute against fraudulent conveyances and transfers has been affirmatively and repeatedly recognized, if not decided, from the case of *Simpson & Gordon v. Tippin,* 5 St. & P. 208, down to the recent case of *Hall & Farley v. Henderson,* 126 Ala. 449, and the more recent case of *Ober, Sons & Co. v. Phillips Buttorff Mfg. Co.,* not yet reported.

As we have seen, it is the settled ruling of the English courts, since the Judgment Act of 1 & 2 Victoria brought choses in action within the statute of 13 Elizabeth, that the creditor may come into chancery to reach and subject that species of property, when it has been fraudulently assigned by the debtor; and this though the act of Victoria, which declared the liability of choses in action to debts, provided a special proceeding for their subjection, quite analogous to our garnishment proceeding. The English ruling is authority for the same conclusion under like conditions here, that a creditor, notwithstanding the garnishment statutes provide a special process to reach the debtor's choses in action, may come into equity to that end, when such choses have been fraudulently transferred by the debtor. Our own decisions are to the same effect. The doctrine was expressly declared by this Court more than fifty years ago in *Sheppard, et al v. Iverson,* 12 Ala. 97, and recognized in *Henderson v. McVay,* 32 Ala. 471, and again in *Hall & Farley v. Henderson, supra.*

It has been the law all along in England, and in this

State, that tangible personal property—goods and chattels—could be levied on at law in the hands of a fraudulent transferee, and that a sale thereof under the execution would convey a perfect title to the purchaser. The fact of the debtor's fraudulent sale of such property, therefore, not only does not stand in the way of the levy of an execution upon it, but does not even cloud the creditor's right to sell it under execution so as to tend to prevent its bringing its full value. Moreover, the garnishment statute is just as efficacious to reach and subject a chattel,—a horse for instance—which has been fraudulently transferred by the debtor, as it is to reach a chose in action.—Code, §§ 2171, 2192.

If the existence of an adequate remedy at law would in any case operate to deny the creditor's right to come into chancery under section 2156, it would seem that it should have that effect in respect of goods and chattels which have been fraudulently disposed of by the debtor; yet, throughout the years, relief has been granted to creditors in respect of such property by the chancery courts. —2 Mayfield's Digest, p. 992, § 126, and cases there cited. So it is laid down by Mr. Freeman as the general doctrine in the premises: He says: "The property, which by a creditor's bill, or by a bill in aid of execution, may be reached and forced to contribute to the satisfaction of a judgment, no doubt embraces everything which can be the subject of levy and sale at law. Generally, in the case of personal property fraudulently transferred, the remedy by direct levy and sale is more speedy and efficient than by creditor's suit, but there is no doubt that such a suit may be maintained to reach personal property as well as real."—3 Freeman on Executions, § 425.

Even under our present garnishment statutes, with their provisions for bringing before the law court the alleged fraudulent assignee of a chose in action, it cannot be said that the remedy they afford, for the subjection of a fraudulently assigned chose in action, is more adequate than the remedy by levy and sale under execution, in respect of chattels. Indeed, since it cannot be affirmed of the remedy by garnishment to subject fraudulently assigned choses in action, as it is justly affirmed of the remedy by execution to subject fraudulently transferred

chattels, that generally it is "More speedy and efficient than by creditor's suits," it may well be said that garnishment as to the one class of property is *less* adequate to the creditor's ends than execution as to the other. And in addition to the "Generally more speedy and efficient" remedy at law by levy and sale, the creditor has also, as to chattels, the same legal remedy by garnishment which he has as to choses in action. Certainly, to say the least, the remedy by bill in chancery cannot be allowed as to tangible personality and denied as to intangible personalty with any show of reason, or, indeed, without manifest inconsistency. We have shown that it has been allowed by this Court in many instances as to chattels, notwithstanding the supposed adequacy of the legal remedy. We are now to show that it has also been allowed by this Court as to choses in action, expressly against the objection that the remedy by garnishment was adequate, and precluded resort to equity. In the case to which we refer, the creditor filed his bill to set aside the fraudulent assignment of a chose in action by his debtor and to subject the debt to the satisfaction of his judgment. Relief was granted by the chancery court, and its decree was affirmed in this Court. The opinion on the point was by Justice GOLDTHWAITE, and is as follows: "At first, we were inclined to think that, under the case made by the bill, the complainant had an adequate remedy at law, by garnishee process, but further reflection has convinced us, that, even if this remedy could be effectively pursued, it does not follow he may not also proceed in equity to set aside the fraudulent assignment, and thus reach assets which in reality belong to his debtor. Fraud is one of the original grounds upon which courts of equity have always considered themselves as entitled to entertain jurisdiction. (Daniel's Chan. Prac. 611; Story's Eq. § 184.) We conclude therefore that it is not objection to this bill, that the party might have redressed himself by pursuing his legal remedy."—*Sheppard, et al v. Iverson*, 12 Ala. 99.

This case has never ben overruled. We do not understand that its soundness has ever been questioned. It was cited approvingly by SOMMERVILLE, Justice, in his

opinion in the much mooted case of *Smith's Executor v. Cockrell*, 66 Ala. 64, in which he maintained that fraud was always a ground of equity jurisdiction. That broad proposition was not established in that case, nor has it since been established in our jurisprudence. Judge STONE also delivered an opinion in the case to the general effect that fraud, in and of itself, could not be the basis of equitable jurisdiction, but he expressly recognized the jurisdiction of equity to set aside fraudulent conveyances of property, saying in the course of his opinion: "It is not our intention, in what we have said, to bring in question the large remedial powers of equity in cases of fraud. It can convert a perfect equity into a legal title; can remove legal encumbrances for the preservation of a paramount equity; can, in a proper case, marshal and adjust conflicting claims; *can subject to debts property conveyed in fraud thereof,*" etc., etc. (Italics ours.)

Fraud was not involved in that part of the case of *Allen, et al v. Montgomery Railroad Co.*, 11 Ala. 437, the decision of which was cited on the former appeal in this case to the proposition "That a bill seeking to subject choses in action, which could be reached by garnishment, was without equity." By the aspect of the bill in that case, the equity of which was denied, it was sought to collect from the subscribers their subscriptions to the stock of the corporation debtor, which were then due to the company. There had been no assignment of these claims by the debtor; no fraud as to them had been committed by the corporation defendant in judgment. Had they been fraudulently assigned, there is no room to doubt that the Court composed of the same judges who sat in *Sheppard, et al v. Iverson, supra,* and speaking by the same justice who delivered the opinion in that case, would have held, as in that case, that the bill to subject them had equity.

There is another consideration—peculiar, perhaps, in its underlying facts, to our jurisprudence, and entirely independent of any to which we have adverted—which, to our minds, takes the equity of bills to reach and subject choses in action, fraudulently assigned by judgment debtors, out of the field of disputation. Our statute of garnishment was enacted in the year 1818. From thence

[Hall & Farley, Trustees, v. Alabama Terminal & Improvement Co.]

on, creditors had the legal right to subject the choses in action of their debtors to the satisfaction of their debts. This legal *right* existed as well in respect of choses in action which had been fraudulently assigned, as against those held by and in the name of the debtors. But there was at first no *remedy* under the garnishment statute whereby choses in action, which had been fraudulently assigned by a debtor, could be reached and applied to the debt. That statute made no provision for a suggestion by the garnishee that a third party claimed the debt, or that the defendant's claim against him had been assigned to a third party, nor for the bringing before the court of such assignee for the purpose of a trial of the right of property in the choses in action as between the defendant in judgment and his assignee. It is true the garnishee might answer that the defendant had assigned the claim against him, but this was not with the view to bringing the assignee in, and nothing of that sort ensued upon such answer; and, upon such answer, or even suggestion of notice of assignment, no judgment could go against the garnishee. It is true, too, that in some cases the plaintiff was allowed to contest the *factum* of the assignment, and to have judgment against the garnishee upon a finding that no assignment had been made; but it was never allowed that the *bona fides* of an assignment in fact made could be inquired into; and it is impossible to conceive that the bare fact of assignment could be so negatived in such a trial as to preclude the suggested assignee from afterwards establishing it against the garnishee, and thus subjecting him to double recoveries, the assignee not being before the court. However that may be, it was expressly ruled under the original garnishment statute that, though the creditor had a legal right to subject choses in action which his debtor had fraudulently assigned, he had no legal remedy to that end by process of garnishment. The case was this: Simpson & Gordon sued Dennis Tippin and summoned Cautrell in garnishment. He answered that he had executed a note to the defendant, Dennis Tippin, which was outstanding and unpaid, but this note had been assigned by said Dennis to Philip Tippin. The plaintiffs contested this answer, and, in support of their contest, pro-

posed to prove that the transfer by Dennis to Philip
Tippin was fraudulently made, to elude the just demands
of his creditors, and without any consideration. The cir-
cuit court's rejection of this evidence was sustained by
this Court, on grounds stated in the following excerpt
from the opinion: "It cannot be controverted, that the
establishment of those facts results in the legal conse-
quence, that the proceeds of this bond remain liable,
notwithstanding such pretended assignment, to the satis-
faction of the debts of the defendant. The only question
is, whether, through the medium of the legal proceeding
here adopted, it is competent to make such appropriation
of the bond. As between the two Tippins and Cautrell,
the garnishee, both at law and in equity, the debt is
due to and recoverable by the assignee from Cautrell,
though fraudulently made, as alleged, and proposed to be
proven."

"If an action was brought against Cautrell, by said
assignee, he would not be heard, to impugn the assign-
ment by such evidence."

"Upon the principle of the decision made by this
Court, in the case of *Drake v. McCausland*, it would be
rejected as '*res inter alios acta*.' The evidence, then,
which was rejected in this case, was clearly irrelevant
to the only issue at bar, which was whether the gar-
nishee was indebted to defendant in attachment."

"The remedy, by attachment and summons, which was
pursued in this case, is not so extended, and guarded
by necessary provisions, as to embrace, in its present con-
dition, this, any more than many other of the various de-
vices of fraudulent debtors, which it is the peculiar
province and power of a court of chancery, to detect and
countervail."—*Simpson & Gordon v. Tippin*, 5 St. & P.
208, 211.

The soundness of this decision has never been doubted.
To the contrary, its doctrine was expressly approved in
*Foster, Nostrand & Co. v. Walker*, 2 Ala. 177; and the
case was approvingly cited in *Flourney & Epping v.
Owen*, 74 Ala. 446, and in *Hodges Brothers v. Coleman
& Carroll*, 76 Ala. 103.

Thus it directly determined, after the statute of 1818
gave to the creditor the legal right to subject choses in

action of his debtor, that his remedy to the effectuation of that right, in respect of choses in action fraudulently assigned by the debtor, was exclusively in equity. More than twenty years after this legal right had been conferred on the creditor, that is in the year 1840, the legislature amended the garnishment statute by incorporating therein the provision now found in it for bringing in the assignee of a defendant's chose in action disclosed by the answer, and for a trial both as to the fact and the *bona fides* of the alleged assignment; but it is thoroughly well settled that the creation by statute of a legal remedy never ousts pre-existing equity jurisdiction.—3 Mayfield's Dig. p. 198, § 436.

We have considered the right of a creditor to file a bill in equity to reach and subject fraudulently assigned choses in action of his debtor, without reference, in the main, to section 818 of the Code. That section is as follows: "A creditor without a lien may file a bill in chancery to discover or to subject to the payment of his debt any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by his debtor." This section has been held to put all creditors on the same footing in respect of the right to invoke the jurisdiction of equity.—*Lehman, et al v. Meyer, et al,* 67 Ala. 403. As it *gives* this remedy to the creditor without a lien as to "Any property" fraudulently transferred or conveyed, it must be intended, either that it gives the remedy also to the creditor with a lien, or that he already had it in respect to "Any property" which had been fraudulently transferred or conveyed. We have seen that choses in action are within the statute of 13 Elizabeth; that they are personal property within section 2156, and within the words "Any property" of section 818 of the Code, and therefore, of course, may be the subject of fraudulent transfers under each of those statutes. In view of all which, section 818 must be, taken as an express legislative provision that a creditor may file a bill in chancery to subject to his debt choses in action, which have been fraudulently transferred by his debtor. The whole conclusion, as to the existence of that remedy for the subjection of that species of property, might well be rested upon section 818 alone.

Upon the several considerations which we have set forth, we have no hesitation in holding that a creditor may proceed in equity to set aside a fraudulent transfer of choses in action by his debtor, and to subject them to the payment of his debt.

The purchase by a corporation of shares of its own capital stock is a fraud upon its creditors. Such shares neither import nor represent any right or claim in or to, or to subject to their payment the assets of the corporation as against the rights of creditors. Shares purchased by the corporation have no value as assets for the payment of corporate debts. Obviously, therefore, the transaction involves, on the one hand, the diversion of corporate assets to persons—shareholders—who have no debt against the company nor the shadow of claim to or against its assets so far as creditors are concerned, and on the other, the acquisition by the company, in the stead of assets thus diverted, of a mere right to re-issue certain shares, or shares to a certain amount in its capital, which right is of no value as assets for creditors. Such a diversion of corporate property is, in respect of creditors, essentially a gift to the shareholders whose shares are purchased by the company, a purely voluntary transfer of corporate assets in fraud of corporate creditors, fraudulent and void as to creditors, and this regardless of the intention actuating the company and the selling shareholders.—2 Morawetz on Corporations, §§ 789, 790, 793, 794; 2 Thompson on Corporations, § § 2054 *et seq.*; *Hall & Farley Trustees v. Henderson,* 126 Ala. 449, 480-2, and authorities there cited.

Money is leviable property (*Bennett v. Bass, et al.* 10 Ala. 951; 1 Freeman on Executions, § 111), and money paid by a debtor corporation for shares of its own stock is property fraudulently transferred, which may be reached and subjected by the creditor on bill in chancery.

Investment bonds of one corporation owned by a debtor corporation are choses in action leviable by process of garnishment. Their transfer in payment for shares of stock of its own capital by the debtor corporation is a fraud on creditors of the corporation, and a creditor may proceed by bill in equity to set aside such transfer and subject them to his debt.

31

[Hall & Farley, Trustees v. Alabama Terminal & Improvement Co.]

Promissory notes, and other forms of obligation of the subscriber to the capital stock of a corporation for the amount of his subscription, which must be also for the face amount of the stock subscribed for and unpaid, are choses in action which, under the garnishment statutes, are subjectable to the debts of the corporation. The forgiveness of them, that is, the surrender of them, cancelled as paid, to the maker, when they have not been paid, is, as to creditors, a fraudulent transfer of them, upon which the creditors may come into equity by bill against the maker to coerce their payment upon the complainant's debts. So too, of course, where the obligor makes only colorable payment, as by the satisfaction of an undoubtedly illegal claim he assumes to hold against the company, or of a claim he has against a third person or another corporation, for which the obligee corporation is not liable. And where the solvent maker actually pays in part and is forgiven as to the residue, or, as to the residue, is allowed credit by the satisfaction of such illegal claim or claim against another corporation or person, he may in like manner be required to pay such residue to creditors of the corporation.

An arrangement, whereby a debtor corporation, for the purpose of releasing and acquitting a solvent subscriber to its stock from his obligation to pay for the same, accepts in lieu the obligation of a known insolvent person, to whom the solvent subscriber transfers his stock, and thereupon releases the solvent subscriber from his obligation and surrenders his promise in writing to pay the amount of his subscription as paid and cancelled, is in legal effect the transfer of property by the corporation to the solvent subscriber without consideration, which is fraudulent and void as to the creditor, and the latter may come into chancery to enforce the original obligation resting on the subscriber to the satisfaction of his debt.

The general title to a chose in action, which has been assigned by a debtor to his creditor as collateral security to the debt, remains in the assigning debtor. The creditor has a lien on the chose which he may, upon default of his debtor, effectuate by reducing it to possession;

that is, collecting the money due on it, and applying it to his debt. If the creditor be dispossessed of the chose in action by the fraudulent deceit of his debtor, he may still assert and effectuate his lien upon it; but he is not bound to. He may, of course, collect his debt from his debtor without reference or recourse to this collateral security; and, in proceeding to collect it, he may acquiesce in the debtor's fraudulent act of dispossession, waive his lien on the chose under its assignment to him as collateral, treat it as the unencumbered property of his debtor, and as such pursue it into the hands of a fraudulent transferree or assignee of his debtor.

But if the creditor, after he has been induced by the misrepresentations of the debtor to surrender such collateral elects, upon coming to a knowledge of the fraud, to insist upon his rights under the assignment to him, and to enforce the chose in action as his property and in his own right against the maker of the obligation, his remedy is not by bill in chancery, as upon a fraudulent transfer by his debtor, but by an action at law on the obligation against the obligor. Such a case is not within § 2156 or § 818 of the Code. The fraud practiced to his dispossession of the chose in action is not a fraudulent transfer under those statutes; and apart from them it is not such fraud as creates any impediment to his recovery in an action at law.

We will not further extend this regrettably long opinion by making the application in detail of the foregoing principles to the varying status of fact laid against the several respondents by the amended bill. Upon those principles, it may be that the bill is without equity, in so far as it seeks to recover on the written promises, assigned by the Alabama Terminal Improvement Company to the complainants as collateral security counting upon assignments, and that it should be dismissed as to the obligors in those undertakings, Wiley and Clarence Murphree, upon their proper and separate motion; but it has equity, under sections 2156 and 818 of the Code, against each of the other individuals and co-partnership respondents. It follows therefore that, in our opinion, the chancellor erred in sustaining the motion to that end, and dismissing the bill.

It will not be a matter of practical difficulty for the chancery court, upon proof of the bill, to measure relief against each of the respondents, so that each shall account for the assets of the debtor corporation which he has received in fraud of the complainants, without subjecting any of them to double recovery or payment.

The complainant, H. M. Hall, has an interest in this appeal, and in the reversal of the decree dismissing the bill for want of equity, as the legal holder of the judgment recovered by him against the Alabama Terminal Improvement Company, which is the basis of this suit, and it by no means stands in the way of a reversal, that errors are assigned jointly by all the complainants.

One of the counsel for appellants seeks to have us retract the ruling made on the former appeal that the chancery court, in the absence of a fraudulent transfer, and in the absence of such other fraud as would positively impede an action at law and proceding in garnishment, has no jurisdiction to subject the choses in action of the debtor to the payment of his debts. We decline to do it. We were thoroughly satisfied of the correctness of that ruling, and that upon the fullest investigation and consideration, when it was made on the former appeal and reaffirmed on the application for rehearing. Nothing against it is now suggested that was not then fully considered. On the other hand, the side lights, so to speak, which have been thrown on the question by our consideration and investigation of the statute of 13 Elizabeth, and its judicial construction, and of our own statute, now constituting section 2156 of the Code, serve of themselves to demonstrate the soundness of our conclusion and leave us, as we have been since the case was finally disposed of on the former appeal, without any doubt of its soundness.

Some expressions, employed in the opinion on rehearing when the case was here before, to the general effect that chancery would not intervene to subject choses in action of the debtor, unless fraud or other circumstances presented an effectual impediment to their subjection by process of garnishment, and which seem to have influenced the chancellor on the last hearing, were indulged

in without proper reference to our statutes in relation to fraudulent conveyances and transfers; and, when considered with reference to those statutes, they are inaccurate and misleading.

It is insisted for appellees that the decree on the motion to suppress depositions, and on the plea of Wiley and others, should not have been made below, inasmuch as the bill was dismissed. This may be so. We need not decide that; nor indeed definitively and absolutely whether those decrees were correct. It is likely, however, that the decree on the motion to suppress was right; and that the decree on the sufficiency of said plea—wherein the chancellor followed the opinion of this Court on the former appeal, which seems now to have proceeded on the mistaken motion that there *was a contest* of the answers in garnishment alleged in the plea—was erroneous.

That the whole case may stand in the chancery court, where and as it did just before the last submission, the decree will be reversed *in toto*, and the cause will be remanded.

Reversed and remanded.

TYSON, DOWDELL and DENSON, J.J., concurring.