FIRST NAT. BANK OF LAUREL *v.* PEARSON ET AL.

[68 South. 921.]

1. CORPORATIONS. *Stockholders. Corporate debts. Repurchase of stock by corporation. Action. Demurrer.*
   Where certain stockholders of a corporation sold their stock amounting to about fifty per cent. of the original stock, back to the corporation at par and thus made the corporation insolvent, they became liable to the creditors of the corporation for the money thus received and it was proper to join them as defendants in one creditors bill, since the creditors held one claim and toward the liquidation of that claim the several defendants must contribute to the extent of money severally paid them in these stock transactions.

2. SAME.
   In such case it makes no difference that the debt due one of the creditors by the corporation was a renewal; the note representing it, being a consolidation of the original debts primarily due the creditor by the corporation, with the added provision "collection fees".

3. SAME.
   A demurrer to such creditors bill did not call in question the creditor's right to recover expenses of suit or collection as provided by the note, which it held as a renewal and consolidation of the several original debts of the corporation to it.

Appeal from the chancery court of Jones county.
HON. SAM WHITMAN, Jr., Chancellor.

Suit by the First National Bank of Laurel against Plummer Pearson and others. From a decree sustaining a demurrer to bill of complaint, complainant appeals.

The facts are fully stated in the opinion of the court.

*Shannon & Schauber,* for appellant.

In discussing suits by creditors against stockholders for diverting the assets of the corporation, Mr. Thomp-

son says: ''A bill in equity is, in like manner, the proper remedy where the assets of the corporation have, in any form of transaction or any pretense, been improperly divided among the stockholders, leaving its debts unpaid; and in this instance equity is the exclusive remedy.'' 3 Thompson on Corporation, section 3430, page 2485.

There are several reasons why equity is the exclusive remedy in this class of cases: first, a resort to equity prevents a multiplicity of suits; second, equity is the only tribunal capable of enforcing contribution among the stockholders; third, equal distribution between the creditors can be decreed by no other tribunal; fourth, conflicting equities between the parties can only be adjusted in a court of equity; fifth, a discovery can be compelled to ascertain the value of the assets of the corporation that have been received by the stockholder, and thus ascertain the extent of his liability. See 3 Thompson on Corporation, section 3432, page 2488.

The second point urged by counsel for appellees is that appellant does not allege in its amended bill of complaint that it was a creditor of the corporation at the time appellees sold their stock to the corporation. In the fifth paragraph of the amended bill it is alleged ''that the sum of eight hundred dollars, borrowed from complainant by said Myrick Mercantile Co., as aforesaid, was used by its officers in buying the shares of the capital stock of said corporation from defendant— (defendant) took the assets of the said corporation subject to the claim of the First National Bank, complainant, who was at that time a creditor of the said Myrick Mercantile Co., in the sum of one thousand two hundred dollars.''

We submit that this paragraph alone sufficiently charges the liability of appellees. It alleges a fact, which is admitted by appellees demurrer; and which, if proven, by appellant would entitle it to a decree. From our

stand point there is only one issue in this case. If the appellees sold their stock to the corporation when appellant was a creditor of the corporation, appellant is entitled to recover the amount that was due it by the corporation at that time. It is purely a question of fact, and we should be allowed an opportunity to establish that fact by proof.

In support of his proposition that a stockholder may sell his stock to the corporation counsel cites 10 Cyc. 1109. Now, there is no dispute about a corporation's right to buy its shares of stock from a stockholder, but that right (its right to buy the stock) must not injure a creditor. "In the absence of a statute denying the right, a corporation may purchase and dispose of its own stock, provided the transaction is made in good faith and without causing injury to its creditors."

*Bullard & Gavin,* for appellees.

First. The cause of action, if any there is, subsists in the trustee in bankruptcy. The complainants' solicitor concedes that at first he thought this to be true. See Remington on Bankruptcy, sec. 1208, page 704, sec. 1712, page 1056 and sec. 1718, page 1060. Second. The bill is multifarious.

This is not a creditor's bill as complainant contends. The First National Bank is not and was never a creditor of any of these defendants, there is no contractual relation alleged against them, but right asserted is in the nature of a tort. Besides a creditor cannot maintain a bill against distinct debtors between whom there is no privity. There is not the first element of debtor and creditor here, but the bill seeks to hold the respondents as trustees *ex malificio* of the separate amounts, separately and severally received by them from the corporation for their shares of the capital stock, and prays for a joint decree against them. If they are not trustees, the bill states no cause of action, for that is the grava-

men of it; if they are trustees and are not jointly so, if they do not jointly hold the whole amount so received by them as such trustees, then the bill is fatally multifarious. To illustrate; if the defendants are jointly liable W. T. Jenkins who only has four shares and received only four hundred dollars would be liable along with N. L. Pearson, Jr., who received seven hundred dollars for seven shares, for near nine hundred dollars, the full amount sued for. Again, if it should be that N. L. Pearson, Jr., is insolvent, Jenkins would be liable for the whole amount, more than twice what he received, and so for all the defendants.

Story in his work on Equity Pleading, sec. 271, defines multifariousness to be: "Joining in one bill distinct and independent matters, and thereby confounding them; as for example, the uniting in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in one bill. The first of these is abrogated by statute; the latter remains the law. In this bill several distinct demands are claimed against all these defendants, and it is sought to fix liability on all of them jointly, by a "joint decree" for what each of them separately is alleged to have done. Mr. Story illustrates the rule against multifariousness by two examples analogous to this in principle. Thus, he says in section 272: "If an estate should be sold in different lots to different persons,—the vendor would not be allowed to file one bill for specific performance against all the purchasers of the estate." And again in sec. 277 the same author says: "For the same reason, an author cannot file a joint bill against several booksellers, for selling the same spurious addition of his work; for there is no privity, between them; and his right against each of them is not joint, but is perfectly distinct.

This is the principle precisely. There is no privity between these defendants, and if any right exists in the complainant against them it is against each to the extent of his liability, and not jointly against all of them. *Columbus Ins. Co.* v. *Humphries,* 64 Miss. 258. The cases referred to by appellant, *Tribbett* v. *Railroad Co.,* 70 Miss. 183 and *Telephone Co.* v. *Willianson,* 101 Miss. 1, do not support his contention.

It may be that the First National Bank could have proceeded against the defendants jointly to prevent a withdrawal of assets from the corporation to its hurt, but it cannot proceed against them jointly to recover assets by them severally withdrawn because, as to that, "the injury suffered" there is no immunity of interest.

I do not know what the appellant means by his contention in his brief that this ground of demurrer is waived by the fifth. He cites the case of *Daray* v. *Lake,* 46 Miss. 109. But this supports our contention, and throws no light on the proposition that the defect is here waived. In that case the court says: "Where a bill is multifarious, the court may take the objection at the hearing *sua sponte,* but the defendants can take the objection only by demurrer.

It is held too that the demurrer must be special. This demurrer is special. The first and second grounds are as specific as could well be made.

Third. The bill does not allege that the Myric Mercantile Co. was insolvent at the time the stock was sold to it. In the absence of a statute forbidding it, a corporation may acquire its own stock provided it does not work an injury to existing creditors. 10 Cyc. 1109. This corporation was, at the time, duly solvent (the contrary is not alleged) and the only allegation of injury to this alleged creditor is that the withdrawal of the par value of that number of shares, in exchange for the stock, rendered it insolvent and it had to quit business, after continuing in business for two years, as the bill shows.

The case of *Kimbrough* v. *Davis*, decided at this term and cited by appellant, is not in conflict with this contention. The court there held that the stockholders could not withdraw the capital stock in liquidation until the creditors were paid but it did not hold that a stockholder could not sell his stock to a perfectly solvent corporation for the par value of it. The facts of that case are wholly different from this.

Stevens, J., delivered the opinion of the court.

The appeal in this case is from a decree of the chancery court of the Second district of Jones county, sustaining a demurrer to an amended bill of complaint filed by appellant as a creditor of a mercantile corporation known as Myrick Mercantile Company against appellees, certain stockholders of said corporation. The bill charges that the capital stock subscribed for and paid in by the original shareholders of the Myrick Mercantile Company was five thousand, one hundred dollars; that appellant became a creditor of the Myrick Mercantile Company in the sum of one thousand, two hundred dollars; that after said corporation became indebted to complainant appellees became dissatisfied as shareholders and sold to the corporation itself the shares of stock owned by appellees, respectively, to the amount of two thousand, six hundred dollars of the par value, or more than fifty per cent. of the original capital; that the funds derived from the First National Bank, appellant herein, were used for the purpose of buying a portion of the stock so purchased by the corporation, and that this fact was unknown to appellant at the time; that the withdrawal of said assets rendered the said corporation insolvent; that "the withdrawal of the said twenty-six shares of the capital stock of said corporation and the taking from the assets of said corporation the said sum of two thousand, six hundred dollars by the aforesaid shareholders rendered said cor-

poration insolvent and wrecked said corporation financially.'' The bill further details the subsequent insolvency of Myrick Mercantile Company, its assignment for the benefit of its creditors, and its final adjudication in bankruptcy by the United States District Court, and the administration of its affairs by the trustee in bankruptcy. It is further averred in the bill that all the assets have been distributed by the trustee; that appellant has received a dividend of twenty-five per cent., which it has duly credited upon the note evidencing its indebtedness and herein sued on. The amount of stock subscribed by the several defendants and the amount of money paid by the corporation in the purchase of the stock and the exact balance claimed by appellant upon its original indebtedness are detailed with particularity. The prayer of the bill is that each of the defendants be held liable to complainant for the amount of money each received in payment of his stock, that the defendants be held as trustees for the money so received, that the court render a decree for the balance found to be due complainant upon the note of the Myrick Mercantile Company, and that a personal decree be rendered against the defendants, not exceeding, however, as against any defendant, the amount of capital withdrawn by him.

The demurrer challenged the sufficiency of the bill—the material assignments being that the bill is multifarious; that the cause of action, if any, is against the respondents individually and severally, and not against them jointly; that the cause of action, if any, is in the trustee in bankruptcy, and not in the complainant; that the bill does not allege that the Myrick Mercantile Company was insolvent at the time the shares of stock were sold by respondents, and that the note given complainant and herein sued on was given and accepted after the shares of stock were alleged to have been sold and transferred; and that there is no equity on the

face of the bill.  The court sustained the demurrer, and dismissed the bill, and from this decree appellant appeals.

The bill, in our judgment, states a cause of action. It was proper to join appellees in one suit.  This is a creditors' bill against shareholders of a defunct corporation to pursue and recover the actual amount of money unlawfully paid by the debtor corporation to the defendants in the purchase of their stock.  The complainant holds one claim and toward the liquidation of that claim the several respondents must contribute to the extent of money severally paid them in these stock transactions.  Regardless of whether the action in in this case could be maintained by the trustee in bankruptcy, it is averred in the bill that the "trustee in bankruptcy declines to bring this suit for complainant," and inasmuch as complainant has no further remedy at law against the insolvent corporation, it has, under all of the authorities, the present equitable remedy against these stockholders.  In Thompson on Corporations (2d Ed.), vol. 4, par. 4079, it is said:

"Generally speaking, the corporation cannot purchase its own stock where the effect of the purchase is injurious to the interest of creditors. . . .  On this question it has been observed by one of the courts that 'a permissive recognition of the unrestricted right of a corporation to purchase the shares of one of its stockholders as against creditors necessarily concedes the same right to the corporation to purchase the entire capital stock.'  If this right be accorded to a corporation, and it is exercised to its full limit, we would have the case of a corporation having distributed its entire capital to its stockholders, leaving it as the owner of its own promises obligatory with which to pay its debts to its creditors.  Of these it would seem, the creditors had a sufficiency."

And again, on page 632:

"When a stockholder transfers his stock to the corporation and receives in return a portion of the capital, he holds such capital subject to the superior equities of creditors."

Many authorities are cited by Mr. Thompson in support of the text in the notes on pages 630, 631, and 632. In the case of *Kimbrough* v. *Davies,* 104 Miss. 722, 61 So. 697, Judge SMITH, speaking for this court, says:

"The capital stock of a corporation is a fund set apart, among other purposes, for that of paying the debts of the corporation; and whether or not it be a trust fund, impressed with all of the attributes of such a fund, it seems to be universally held, upon sound and plain principles of common honesty, that it cannot be withdrawn by the stockholders until all of the debts then owing by the corporation have been paid."

Section 923, Code of 1906, provides that:

"No part of the capital stock in any corporation shall be withdrawn or diverted from its purpose, nor a dividend declared, when the company is insolvent, or would be rendered insolvent by such withdrawal on the payment of such dividend."

The retiring, therefore, of twenty-six shares of the capital stock of the Myrick Mercantile Company under the circumstances detailed in the bill amounted to a withdrawal of a portion of the capital stock and violates the spirit, if not the plain letter, of this statute. This specific question is discussed with great satisfaction in *Wood* v. *Dummer,* 3 Mason, 308, Fed. Cas. No. 17,944; *Crandall* v. *Lincoln,* 52 Conn. 73, 52 Am. Rep. 560; *Buck* v. *Ross,* 68 Conn. 29, 35 Atl. 763, 57 Am. St. Rep. 60; *Hall* v. *Henderson,* 126 Ala. 449, 28 So. 531, 61 L. R. A. 621, 85 ·Am. St. Rep. 53; *Hall* v. *Alabama Terminal & I. Co.,* 143 Ala. 464, 39 So. 285, 2 L. R. A. (N. S.) 130, 5 Ann. Cas. 363. In the last case, McCLELLAN, C. J., well says:

"The purchase by a corporation of shares of its own capital stock is a fraud upon its creditors. Such shares neither import nor represent any right or claim in or to, or to subject to their payment, the assets of the corporation as against the rights of creditors. Shares purchased by the corporation have no value as assets, for the payment of corporate debts. Obviously, therefore, the transaction involves, on the one hand, the diversion of corporate assets to persons—shareholders—who have no debt against the company, nor the shadow of claim to or against its assets so far as creditors are concerned, and, on the other, the acquisition by the company, in the stead of assets thus diverted, of a mere right to reissue certain shares, or shares to a certain amount in its capital, which right is of no value as assets for creditors. Such a diversion of corporate property is, in respect of creditors, essentially a gift to the shareholders whose shares are purchased by the company, a purely voluntary transfer of corporate assets in fraud of corporate creditors, fraudulent and void as to creditors, and this, regardless of the intention actuating the company and the selling shareholders."

We think it immaterial that the indebtedness of appellant was renewed. The original debts primarily due by the corporation to appellant were extended and consolidated into one note, and the new note seems to have the added provision of "collection fees." The debt itself has never been paid, and the right to recover any expenses of suit or collection as provided by the new note is not called in question by the demurrer.

Let the cause be reversed and remanded with leave to appellees to answer the bill within thirty days after the receipt of mandate by the clerk of the court below.

*Reversed and remanded.*